# CALIFORNIA *v.* GREEN

No. 387.   Argued April 20, 1970—Decided June 23, 1970

William E. James, Assistant Attorney General of California, argued the cause for petitioner. With him on the briefs was *Thomas C. Lynch,* Attorney General.

*E. Barrett Prettyman, Jr.,* by appointment of the Court, 396 U. S. 1048, argued the cause and filed a brief for respondent.

*Solicitor General Griswold* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Assistant Attorney General Wilson,* *Peter L. Strauss, Beatrice Rosenberg,* and *Roger A. Pauley.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Section 1235 of the California Evidence Code, effective as of January 1, 1967, provides that "[e]vidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." [1]  In *People* v. *Johnson,* 68 Cal. 2d 646, 441 P. 2d 111 (1968), cert. denied, 393 U. S. 1051 (1969), the California Supreme Court held that prior statements of a witness that were not subject to cross-examination when originally made, could not be introduced under this section to prove the charges against a defendant without violating the defendant's right of confrontation guaranteed by the Sixth Amendment and made applicable to

---

[1] Cal. Evid. Code § 1235 (1966). Section 770 merely requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial. See Cal. Evid. Code § 770 (1966); *People* v. *Johnson,* 68 Cal. 2d 646, 650 n. 2, 441 P. 2d 111, 114 n. 2 (1968), cert. denied, 393 U. S. 1051 (1969).

the States by the Fourteenth Amendment. In the case now before us the California Supreme Court applied the same ban to a prior statement of a witness made at a preliminary hearing, under oath and subject to full cross-examination by an adequately counseled defendant. We cannot agree with the California court for two reasons, one of which involves rejection of the holding in *People* v. *Johnson*.

I

In January 1967, one Melvin Porter, a 16-year-old minor, was arrested for selling marihuana to an under-cover police officer. Four days after his arrest, while in the custody of juvenile authorities, Porter named re-spondent Green as his supplier. As recounted later by one Officer Wade, Porter claimed that Green had called him earlier that month, had asked him to sell some "stuff" or "grass," and had that same afternoon personally de-livered a shopping bag containing 29 "baggies" of mari-huana. It was from this supply that Porter had made his sale to the undercover officer. A week later, Porter testified at respondent's preliminary hearing. He again named respondent as his supplier, although he now claimed that instead of personally delivering the mari-huana, Green had showed him where to pick up the shopping bag, hidden in the bushes at Green's parents' house. Porter's story at the preliminary hearing was subjected to extensive cross-examination by respondent's counsel—the same counsel who represented respondent at his subsequent trial. At the conclusion of the hear-ing, respondent was charged with furnishing marihuana to a minor in violation of California law.

Respondent's trial took place some two months later before a court sitting without a jury. The State's chief witness was again young Porter. But this time Porter, in the words of the California Supreme Court, proved to be "markedly evasive and uncooperative on the

stand." *People* v. *Green*, 70 Cal. 2d 654, 657, 451 P. 2d 422, 423 (1969). He testified that respondent had called him in January 1967, and asked him to sell some unidentified "stuff." He admitted obtaining shortly thereafter 29 plastic "baggies" of marihuana, some of which he sold. But when pressed as to whether respondent had been his supplier, Porter claimed that he was uncertain how he obtained the marihuana, primarily because he was at the time on "acid" (LSD), which he had taken 20 minutes before respondent phoned. Porter claimed that he was unable to remember the events that followed the phone call, and that the drugs he had taken prevented his distinguishing fact from fantasy. See, *e. g.,* App. 7–11, 24–25.

At various points during Porter's direct examination, the prosecutor read excerpts from Porter's preliminary hearing testimony. This evidence was admitted under § 1235 for the truth of the matter contained therein. With his memory "refreshed" by his preliminary hearing testimony, Porter "guessed" that he had indeed obtained the marihuana from the backyard of respondent's parents' home, and had given the money from its sale to respondent. On cross-examination, however, Porter indicated that it was his memory of the preliminary testimony which was "mostly" refreshed, rather than his memory of the events themselves, and he was still unsure of the actual episode. See App. 25. Later in the trial, Officer Wade testified, relating Porter's earlier statement that respondent had personally delivered the marihuana. This statement was also admitted as substantive evidence. Porter admitted making the statement, App. 59, and insisted that he had been telling the truth as he then believed it both to Officer Wade and at the preliminary hearing; but he insisted that he was also telling the truth now in claiming inability to remember the actual events.

Respondent was convicted. The District Court of Appeal reversed, holding that the use of Porter's prior statements for the truth of the matter asserted therein, denied respondent his right of confrontation under the California Supreme Court's recent decision in *People* v. *Johnson, supra.* The California Supreme Court affirmed, finding itself "impelled" by recent decisions of this Court to hold § 1235 unconstitutional insofar as it permitted the substantive use of prior inconsistent statements of a witness, even though the statements were subject to cross-examination at a prior hearing. We granted the State's petition for certiorari, 396 U. S. 1001 (1970).

## II

The California Supreme Court construed the Confrontation Clause of the Sixth Amendment to require the exclusion of Porter's prior testimony offered in evidence to prove the State's case against Green because, in the court's view, neither the right to cross-examine Porter at the trial concerning his current and prior testimony, nor the opportunity to cross-examine Porter at the preliminary hearing satisfied the commands of the Confrontation Clause. We think the California court was wrong on both counts.

Positing that this case posed an instance of a witness who gave trial testimony inconsistent with his prior, out-of-court statements,[2] the California court, on the authority of its decision in *People* v. *Johnson, supra,* held that belated cross-examination before the trial court, "is not an adequate substitute for the right to cross-examination contemporaneous with the original testimony before a different tribunal." *People* v. *Green, supra,* at 659, 451 P. 2d, at 425. We disagree.

---

[2] See *People* v. *Green,* 70 Cal. 2d 654, 657 n. 1, 451 P. 2d 422, 424 n. 1 (1969).

Section 1235 of the California Evidence Code represents a considered choice by the California Legislature [3] between two opposing positions concerning the extent to which a witness' prior statements may be introduced at trial without violating hearsay rules of evidence. The orthodox view, adopted in most jurisdictions,[4] has been that the out-of-court statements are inadmissible for the usual reasons that have led to the exclusion of hearsay statements: the statement may not have been made under oath; the declarant may not have been subjected to cross-examination when he made the statement; and the jury cannot observe the declarant's demeanor at the time he made the statement. Accordingly, under this view, the statement may not be offered to show the truth of the matters asserted therein, but can be introduced under appropriate limiting instructions to impeach the credibility of the witness who has changed his story at trial.

In contrast, the minority view adopted in some jurisdictions [5] and supported by most legal commentators and by recent proposals to codify the law of evidence [6] would

---

[3] See the comments of the California Law Revision Commission, Cal. Evid. Code § 1235 (1966).

[4] *E. g., Ellis* v. *United States,* 138 F. 2d 612, 616–621 (C. A. 8th Cir. 1943); *State* v. *Saporen,* 205 Minn. 358, 361–362, 285 N. W. 898, 900–901 (1939). The cases are collected in 3 J. Wigmore, Evidence § 1018 (3d ed. 1940) [hereinafter cited as Wigmore] and Annot., 133 A. L. R. 1454, 1455–1457 (1941).

[5] See *Jett* v. *Commonwealth,* 436 S. W. 2d 788 (Ky. 1969); *Gelhaar* v. *State,* 41 Wis. 2d 230, 163 N. W. 2d 609 (1969). See also *United States* v. *De Sisto,* 329 F. 2d 929 (C. A. 2d Cir.) (Friendly, J.), cert. denied, 377 U. S. 979 (1964); *United States* v. *Block,* 88 F. 2d 618, 620 (C. A. 2d Cir.) (L. Hand, J.), cert. denied, 301 U. S. 690 (1937); *Di Carlo* v. *United States,* 6 F. 2d 364, 368 (C. A. 2d Cir.) (L. Hand, J.), cert. denied, 268 U. S. 706 (1925).

[6] Dean Wigmore was the first noted commentator to adopt this position, abandoning his earlier approval, in the first edition of his Treatise, of the orthodox view. See 3 Wigmore § 1018 n. 2. Both the Model Code and the Uniform Rules have since followed the

permit the substantive use of prior inconsistent statements on the theory that the usual dangers of hearsay are largely nonexistent where the witness testifies at trial. "The whole purpose of the Hearsay rule has been already satisfied [because] the witness is present and subject to cross-examination [and] [t]here is ample opportunity to test him as to the basis for his former statement." [7]

Our task in this case is not to decide which of these positions, purely as a matter of the law of evidence, is the sounder. The issue before us is the considerably narrower one of whether a defendant's constitutional right "to be confronted with the witnesses against him" is necessarily inconsistent with a State's decision to change its hearsay rules to reflect the minority view described above. While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of

---

Wigmore position, see Model Code of Evidence Rule 503 (b) (1942); Uniform Rule of Evidence 63 (1) (1953), as has the recent preliminary draft of the rules of evidence for the lower federal courts, see Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8-01 (c)(2) (1969). For commentators who have urged views similar to Wigmore's see C. McCormick, Evidence § 39 (1954); Maguire, The Hearsay System: Around and Through the Thicket, 14 Vand. L. Rev. 741, 747 (1961); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L. Rev. 177, 192–196 (1948).

[7] 3 Wigmore § 1018.

confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber* v. *Page,* 390 U. S. 719 (1968); *Pointer* v. *Texas,* 380 U. S. 400 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.[8]

Given the similarity of the values protected, however, the modification of a State's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause.

The origin and development of the hearsay rules and of the Confrontation Clause have been traced by others and need not be recounted in detail here.[9] It is sufficient to note that the particular vice that gave impetus to the confrontation claim was the practice of trying defendants on "evidence" which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact. Prosecuting attorneys "would frequently allege matters which the prisoner denied and called upon them to prove. The

---

[8] See The Supreme Court, 1967 Term, 82 Harv. L. Rev. 63, 236 (1968); Note, Confrontation and the Hearsay Rule, 75 Yale L. J. 1434, 1436 (1966).

[9] See, *e. g.,* McCormick, *supra,* n. 6, at 455–457; 5 Wigmore § 1364; Morgan, *supra,* n. 6, at 179–183. See also 9 W. Holdsworth, A History of English Law 177–187, 214–219 (3d ed. 1944); Note, Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials, 113 U. Pa. L. Rev. 741, 746–747 (1965).

proof was usually given by reading depositions, confessions of accomplices, letters, and the like; and this occasioned frequent demands by the prisoner to have his 'accusers,' *i. e.* the witnesses against him, brought before him face to face . . . ." [10]

But objections occasioned by this practice appear primarily to have been aimed at the failure to call the witness to confront personally the defendant at his trial. So far as appears, in claiming confrontation rights no objection was made against receiving a witness' out-of-court depositions or statements, so long as the witness was present at trial to repeat his story and to explain or repudiate any conflicting prior stories before the trier of fact.

Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity,

---

[10] 1 J. Stephen, A History of the Criminal Law of England 326 (1883). See also 9 Holdsworth, *supra,* n. 9, at 225–228.

A famous example is provided by the trial of Sir Walter Raleigh for treason in 1603. A crucial element of the evidence against him consisted of the statements of one Cobham, implicating Raleigh in a plot to seize the throne. Raleigh had since received a written retraction from Cobham, and believed that Cobham would now testify in his favor. After a lengthy dispute over Raleigh's right to have Cobham called as a witness, Cobham was not called, and Raleigh was convicted. See 1 Stephen, *supra,* at 333–336; 9 Holdsworth, *supra,* at 216–217, 226–228. At least one author traces the Confrontation Clause to the common-law reaction against these abuses of the Raleigh trial. See F. Heller, The Sixth Amendment 104 (1951).

> not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* v. *United States,* 156 U. S. 237, 242–243 (1895).

Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [11] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections. If the witness admits the prior statement is his, or if there is other evidence to show the statement is his, the danger of faulty reproduction is negligible and the jury can be confident that it has before it two conflicting statements by the same witness. Thus, as far as the

---

[11] 5 Wigmore § 1367.

oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury; indeed, the very fact that the prior statement was not given under a similar circumstance may become the witness' explanation for its inaccuracy—an explanation a jury may be expected to understand and take into account in deciding which, if either, of the statements represents the truth.

Second, the inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial. The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant. We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement. The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness' "[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." *State v. Saporen,* 205 Minn. 358, 362, 285 N. W. 898, 901 (1939). That danger, however, disappears when the witness has changed his testimony so that, far from "hardening," his prior statement has softened to the point where he now repudiates it.[12]

---

[12] See Comment, Substantive Use of Extrajudicial Statements of Witnesses Under the Proposed Federal Rules of Evidence, 4 U. Rich. L. Rev. 110, 117–118 (1969); 82 Harv. L. Rev. 475 n. 16 (1968).

The defendant's task in cross-examination is, of course, no longer identical to the task that he would have faced if the witness had not changed his story and hence had to be examined as a "hostile" witness giving evidence for the prosecution. This difference, however, far from lessening, may actually enhance the defendant's ability to attack the prior statement. For the witness, favorable to the defendant, should be more than willing to give the usual suggested explanations for the inaccuracy of his prior statement, such as faulty perception or undue haste in recounting the event. Under such circumstances, the defendant is not likely to be hampered in effectively attacking the prior statement, solely because his attack comes later in time.

Similar reasons lead us to discount as a constitutional matter the fact that the jury at trial is foreclosed from viewing the declarant's demeanor when he first made his out-of-court statement. The witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement. The jury is alerted by the inconsistency in the stories, and its attention is sharply focused on determining either that one of the stories reflects the truth or that the witness who has apparently lied once, is simply too lacking in credibility to warrant its believing either story. The defendant's confrontation rights are not violated, even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost.

It may be true that a jury would be in a better position to evaluate the truth of the prior statement if it could somehow be whisked magically back in time to witness a gruelling cross-examination of the declarant as he first gives his statement. But the question as we

see it must be not whether one can somehow imagine the jury in "a better position," but whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. On that issue, neither evidence [13] nor reason convinces us that contemporaneous cross-examination before the ultimate trier of fact is so much more effective than subsequent examination that it must be made the touchstone of the Confrontation Clause.

Finally, we note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situation—situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial. These situations have arisen through application of a number of traditional "exceptions" to the hearsay rule, which permit the introduction of evidence despite the absence of the declarant usually on the theory that the evidence possesses other indicia of "reliability" and is incapable of being admitted, despite good-faith efforts of the State, in any way that will secure

---

[13] The California Supreme Court in its earlier decision on this issue stated that "[t]his practical truth [the importance of immediate cross-examination] is daily verified by trial lawyers, not one of whom would willingly postpone to both a later date and a different forum his right to cross-examine a witness against his client." *People* v. *Johnson,* 68 Cal. 2d 646, 655, 441 P. 2d 111, 118 (1968), cert. denied, 393 U. S. 1051 (1969). The citations that follow this sentence are to books on trial practice that shed little empirical light on the actual comparative effectiveness of subsequent, as opposed to timely, cross-examination. As the text suggests, where the witness has changed his story at trial to favor the defendant he should, if anything, be more rather than less vulnerable to defense counsel's explanations for the inaccuracy of his former statement.

confrontation with the declarant.[14]  Such exceptions, dispensing altogether with the literal right to "confrontation" and cross-examination, have been subjected on several occasions to careful scrutiny by this Court.  In *Pointer* v. *Texas,* 380 U. S. 400 (1965), for example, the State introduced at defendant's trial the transcript of a crucial witness' testimony from a prior preliminary hearing.  The witness himself, one Phillips, had left the jurisdiction and did not appear at trial.  "Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips," 380 U. S., at 407, we held that its introduction violated the defendant's confrontation rights.  Similarly, in *Barber* v. *Page,* 390 U. S. 719 (1968), the State introduced the preliminary hearing testimony of an absent witness, incarcerated in a federal prison, under an "unavailability" exception to its hearsay rules.  We held that that exception would not justify the denial of confrontation where the State had not made a good-faith effort to obtain the presence of the allegedly "unavailable" witness.

We have no occasion in the present case to map out a theory of the Confrontation Clause that would determine the validity of all such hearsay "exceptions" permitting the introduction of an absent declarant's statements.  For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem.  Thus, in *Douglas* v. *Alabama,* 380 U. S. 415 (1965), decided on the same day as *Pointer,* we reversed a conviction in which the prosecution read

---

[14] See generally, *e. g.,* 5 Wigmore §§ 1420–1422.

into the record an alleged confession of the defendant's supposed accomplice, Loyd, who refused to testify on self-incrimination grounds. The confrontation problem arose precisely because Loyd could not be cross-examined as to his prior statement; had such cross-examination taken place, the opinion strongly suggests that the confrontation problem would have been nonexistent:

> "In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. . . . Loyd could not be cross-examined on a statement imputed to but not admitted by him. . . . [S]ince [the State's] evidence tended to show only that Loyd made the confession, cross-examination . . . as to its genuineness could not substitute for cross-examination of Loyd to test the truth of the statement itself. . . .
>
> "Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his." 380 U. S., at 419–420.

Again, in *Bruton* v. *United States,* 391 U. S. 123 (1968), the Court found a violation of confrontation rights in the admission of a codefendant's confession, implicating Bruton, where the co-defendant did not take the stand. The Court again emphasized that the error arose because the declarant "does not testify and cannot be tested by cross-examination," 391 U. S., at 136, suggesting that no confrontation problem would have existed if Bruton had been able to cross-examine his co-defendant.[15]   Cf.

---

[15] Whether admission of the statement would have violated federal evidentiary rules against hearsay, see 391 U. S., at 128 n. 3, is, as emphasized earlier in this opinion, a wholly separate question. Indeed, failure to comply with federal evidentiary standards appears to be the reason for the result in *Bridges* v. *Wixon,* 326 U. S. 135 (1945)—the only case which might be thought to suggest the exist-

*Harrington* v. *California,* 395 U. S. 250, 252–253 (1969). Indeed, *Bruton*'s refusal to regard limiting instructions as capable of curing the error, suggests that there is little difference as far as the Constitution is concerned between permitting prior inconsistent statements to be used only for impeachment purposes, and permitting them to be used for substantive purposes as well.

We find nothing, then, in either the history or the purposes of the Confrontation Clause, or in the prior decisions of this Court, that compels the conclusion reached by the California Supreme Court concerning the validity of California's § 1235. Contrary to the judgment of that court, the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.

---

ence of a possible constitutional problem in admitting a witness' prior inconsistent statements as substantive evidence. There the Court reversed a deportation order based on such evidence, but the holding was an alternative one and explicitly rested on the ground that the relevant agency rules did not permit the use of such statements. See 326 U. S., at 151–153. While the Court did suggest that the use of such statements in a criminal case would run "counter to the notions of fairness on which our legal system is founded," *id.,* at 154, the discussion and citations appear to refer to the "orthodox" position earlier adopted by this Court as a matter of federal evidentiary, not constitutional, law. See *Hickory* v. *United States,* 151 U. S. 303, 309 (1894). While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking, see *Thompson* v. *Louisville,* 362 U. S. 199 (1960), we do not read *Bridges* as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted. The Court's opinion in *Bridges* does not discuss the Confrontation Clause.

## III

We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced.

This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox* v. *United States,* 156 U. S. 237 (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. Indeed, we indicated as much in *Pointer* v. *Texas,* 380 U. S. 400, 407 (1965), where we noted that "[t]he case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a

complete and adequate opportunity to cross-examine."
And in *Barber* v. *Page,* 390 U. S. 719, 725–726 (1968),
although noting that the preliminary hearing is ordinarily
a less searching exploration into the merits of a case
than a trial, we recognized that "there may be some
justification for holding that the opportunity for cross-
examination of a witness at a preliminary hearing satisfies
the demands of the confrontation clause where the
witness is shown to be actually unavailable . . . ." In
the present case respondent's counsel does not appear
to have been significantly limited in any way in the
scope or nature of his cross-examination of the witness
Porter at the preliminary hearing. If Porter had died
or was otherwise unavailable, the Confrontation Clause
would not have been violated by admitting his testimony
given at the preliminary hearing—the right of cross-
examination then afforded provides substantial compli-
ance with the purposes behind the confrontation require-
ment, as long as the declarant's inability to give live
testimony is in no way the fault of the State. Compare
*Barber* v. *Page, supra,* with *Motes* v. *United States,* 178
U. S. 458 (1900).

But nothing in *Barber* v. *Page* or in other cases in this
Court indicates that a different result must follow where
the State produces the declarant and swears him as a
witness at the trial. It may be that the rules of evi-
dence applicable in state or federal courts would restrict
resort to prior sworn testimony where the declarant is
present at the trial. But as a constitutional matter, it
is untenable to construe the Confrontation Clause to
permit the use of prior testimony to prove the State's
case where the declarant never appears, but to bar that
testimony where the declarant is present at the trial, ex-
posed to the defendant and the trier of fact, and subject

to cross-examination.[16]    As in the case where the witness is physically unproducible, the State here has made every effort to introduce its evidence through the live testimony of the witness; it produced Porter at trial, swore him as a witness, and tendered him for cross-examination.    Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege

---

[16] The explanation advanced for the contrary conclusion seems to be that where the witness is dead or otherwise unavailable, the State may in good faith assume he would have given the same story at trial, and may introduce the former testimony as reasonably reliable and as prompted by the factor of "necessity."    On the contrary, it is argued, where the witness is present to testify but does not relate the same story, "necessity," "reliability," and the assumption that the story would be the same are all destroyed.  See *People v. Green,* 70 Cal. 2d 654, 664 and n. 11, 451 P. 2d 422, 428–429 and n. 11 (1969) ;  Brief for Respondent 32.    But the only "necessity" that exists in either case is the State's "need" to introduce relevant evidence that through no fault of its own cannot be introduced in any other way.    And the "assumption" that the witness would have given the same story if he had been available at trial, is little more than another way of saying that the testimony was given under circumstances that make it reasonably reliable—there is nothing in a witness' death by itself, for example, which would justify assuming his story would not have changed at trial.    Finally, the "reliability" of the statement is based on the circumstances under which it was given—circumstances that remain unaffected regardless of whether the witness is present or absent at the later trial.    Surely in terms of protecting the defendant's interests, and the jury's ability to assess the reliability of the evidence it hears, it seems most unlikely that respondent in this case would have been better off, as the dissent seems to suggest, if Porter had died, and his prior testimony were admitted, than he was in the instant case where Porter's conduct on the stand cast substantial doubt on his prior statement.    As long as the State has made a good-faith effort to produce the witness, the actual presence or absence of the witness cannot be constitutionally relevant for purposes of the "unavailability" exception.

against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against Green.[17]

## IV

There is a narrow question lurking in this case concerning the admissibility of Porter's statements to Officer Wade. In the typical case to which the California court addressed itself, the witness at trial gives a version of the ultimate events different from that given on a prior occasion. In such a case, as our holding in Part II makes clear, we find little reason to distinguish among prior inconsistent statements on the basis of the circumstances under which the prior statements were given. The subsequent opportunity for cross-examination at trial with respect to both present and past versions of the event, is adequate to make equally admissible, as far as the Confrontation Clause is concerned, both the casual, off-hand remark to a stranger, and the carefully recorded testimony at a prior hearing. Here, however, Porter claimed at trial that he could not remember the events that occurred after respondent telephoned him and hence failed to give any current version of the more important events described in his earlier statement.

Whether Porter's apparent lapse of memory so affected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause

---

[17] The hearsay exception itself has generally recognized that a witness is "unavailable" for purposes of the exception where through lapse of memory or a plea of the Fifth Amendment privilege, the State cannot secure his live testimony. See 5 Wigmore §§ 1408, 1409.

in this case [18] is an issue which is not ripe for decision at this juncture. The state court did not focus on this precise question, which was irrelevant given its broader and erroneous premise that an out-of-court statement of a witness is inadmissible as substantive evidence, whatever the nature of the opportunity to cross-examine at the trial. Nor has either party addressed itself to the question. Its resolution depends much upon the

---

[18] Even among proponents of the view that prior statements should be admissible as substantive evidence, disagreement appears to exist as to whether to apply this rule to the case of a witness who disclaims all present knowledge of the ultimate event. Commentators have noted that in such a case the opportunities for testing the prior statement through cross-examination at trial may be significantly diminished. See Falknor, The Hearsay Rule and Its Exceptions, 2 U. C. L. A. L. Rev. 43, 53 (1954); 31 N. Y. U. L. Rev. 1101, 1105 (1956). While both the Model Code and the Uniform Rules would apparently admit prior inconsistent statements even where the witness claims to have no present knowledge or recollection of the event, see Model Code of Evidence Rule 503 (b), Comment *b*, at 234 (1942); Uniform Rule of Evidence 63 (1), Comment (1953), the preliminary draft of proposed rules of evidence for lower federal courts seems to limit admissibility to the case where the witness actually testifies concerning the substance of the event at issue, see Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, rule 8–01 (c) (2) (i), Advisory Comm. Notes at 165 (1969). See Comment, Substantive Use of Extrajudicial Statements of Witnesses Under the Proposed Federal Rules of Evidence, 4 U. Rich. L. Rev. 110, 119 and n. 40 (1969). The latter position accords with the common-law practice of not permitting prior inconsistent statements to be introduced even for impeachment purposes until and unless the witness has actually given "inconsistent" testimony concerning the substance of the event described in the prior statement. *Id.*, at 119, 121; see *e. g., Westinghouse Electric Corp.* v. *Wray Equipment Corp.*, 286 F. 2d 491, 493 (C. A. 1st Cir.), cert. denied, 366 U. S. 929 (1961); 3 Wigmore § 1043.

unique facts in this record, and we are reluctant to proceed without the state court's views of what the record actually discloses relevant to this particular issue. What is more, since we hold that the admission of Porter's preliminary hearing testimony is not barred by the Sixth Amendment despite his apparent lapse of memory, the reception into evidence of the Porter statement to Officer Wade may pose a harmless-error question which is more appropriately resolved by the California courts in the first instance. Similarly, faced on remand with our decision that § 1235 is not invalid on its face, the California Supreme Court may choose to dispose of the case on other grounds raised by Green but not passed upon by that court; for example, because of its ruling on § 1235, the California court deliberately put aside the issue of the sufficiency of the evidence to sustain conviction.[19]

We therefore vacate the judgment of the California Supreme Court and remand the case to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the decision of this case.

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

---

[19] This issue is not insubstantial. Conviction here rests almost entirely on the evidence in Porter's two prior statements which were themselves inconsistent in some respects. See, *e. g.*, Brief for Respondent 3 and n. 2, 49–50. The California Supreme Court also found it unnecessary to reach respondent's additional contentions of suppression of evidence and prejudicial misconduct. See *People* v. *Green*, 70 Cal. 2d 654, 666, 451 P. 2d 422, 429 (1969). Moreover, as noted earlier in this opinion, *ante*, at 153 and n. 2, the California court suggested that Porter's prior statements may not

Mr. Chief Justice Burger, concurring.

I join fully in Mr. Justice White's opinion for the Court. I add this comment only to emphasize the importance of allowing the States to experiment and innovate, especially in the area of criminal justice. If new standards and procedures are tried in one State their success or failure will be a guide to others and to the Congress.

Here, California, by statute, recently adopted a rule of evidence[1] that, as Mr. Justice White observes, has long been advocated by leading commentators. Two other States, Kentucky[2] and Wisconsin,[3] have within the past year embraced similar doctrines by judicial decisions. None of these States has yet had sufficient experience with their innovations to determine whether or not the modification is sound, wise, and workable. The California Supreme Court, in striking down the California statute, seems to have done so in the mistaken belief that this Court, through the Confrontation Clause, has imposed rigid limits on the States in this area. As the Court's opinion indicates, that conclusion is erroneous. The California statute meets the tests of the Sixth and Fourteenth Amendments, and accordingly, the wisdom of the statute is properly left to the State of California; other jurisdictions will undoubtedly watch the experiment with interest. The circumstances of this case demonstrate again that neither the Constitution as originally drafted, nor any amendment, nor indeed any need, dictates that we must have absolute uniformity in the

---

even have been admissible under § 1235 as "inconsistent" with his testimony at trial. Compare *People* v. *Green, supra,* at 657 n. 1, 451 P. 2d, at 424 n. 1, with n. 18, *supra.*

[1] Cal. Evid. Code § 1235 (1966).

[2] *Jett* v. *Commonwealth,* 436 S. W. 2d 788 (Ky. 1969).

[3] *Gelhaar* v. *State,* 41 Wis. 2d 230, 163 N. W. 2d 609 (1969), petition for certiorari pending, No. 389, Misc., O. T. 1969.

criminal law in all the States. Federal authority was never intended to be a "ramrod" to compel conformity to nonconstitutional standards.

MR. JUSTICE HARLAN, concurring.

The precise holding of the Court today is that the Confrontation Clause of the Sixth Amendment does not preclude the introduction of an out-of-court declaration, taken under oath and subject to cross-examination, to prove the truth of the matters asserted therein, when the declarant is available as a witness at trial. With this I agree.[1]

The California decision that we today reverse demonstrates, however, the need to approach this case more broadly than the Court has seen fit to do, and to confront squarely the Confrontation Clause because the holding of the California Supreme Court is the result of an understandable misconception, as I see things, of numerous decisions of this Court, old and recent, that have indiscriminately equated "confrontation" with "cross-examination."[2] See Bruton v. United States, 391 U. S. 123 (1968); Roberts v. Russell, 392 U. S. 293 (1968); Pointer v. Texas, 380 U. S. 400 (1965); Douglas v. Alabama, 380 U. S. 415 (1965); Brookhart v. Janis, 384 U. S. 1 (1966);

---

[1] The Court declines to consider the admissibility of Porter's out-of-court declaration to Officer Wade and remands for a determination as to whether it was properly admissible under California law. I consider this in Part IV, infra.

[2] While this broad problem that lies beneath the surface of today's case would, in my view, have been more appropriately considered in a more conventional hearsay setting, where the maker of extrajudicial statement is not present at trial, it has been briefed and argued by both sides, and I reach it now, notwithstanding the pendency of No. 21, Dutton v. Evans, on our docket. Dutton was argued before us on Oct. 15, 1969, and on Apr. 27, 1970, was set for reargument. 397 U. S. 1060. The case will be heard at the next Term.

*Barber* v. *Page,* 390 U. S. 719 (1968); *Smith* v. *Illinois,* 390 U. S. 129 (1968); *Bridges* v. *Wixon,* 326 U. S. 135 (1945); *Salinger* v. *United States,* 272 U. S. 542, 548 (1926) (dictum); *Reynolds* v. *United States,* 98 U. S. 145 (1879); *Mattox* v. *United States,* 156 U. S. 237 (1895); *Motes* v. *United States,* 178 U. S. 458 (1900); *Kirby* v. *United States,* 174 U. S. 47 (1899); and *Dowdell* v. *United States,* 221 U. S. 325, 330 (1911).[3]

These decisions have, in my view, left ambiguous whether and to what extent the Sixth Amendment "constitutionalizes" the hearsay rule of the common law.

If "confrontation" is to be equated with the right to cross-examine, it would transplant the ganglia of hearsay rules and their exceptions into the body of constitutional protections. The stultifying effect of such a course upon this aspect of the law of evidence in both state and federal systems need hardly be labored, and it is good that the Court today, as I read its opinion, firmly eschews that course.

Since, in my opinion, this state decision imperatively demonstrates the need for taking a fresh look at the constitutional concept of "confrontation," I do not think that *stare decisis* should be allowed to stand in the way, albeit the presently controlling cases are of recent vintage.[4] As the Court's opinion suggests, the Confron-

---

[3] The easy assumption that confrontation is the right to exclude hearsay also appears in cases involving state criminal prosecutions where this Court, as a matter of due process, declined to hold applicable to the States the Sixth Amendment's right to confrontation. See, *e. g., Stein* v. *New York,* 346 U. S. 156 (1953); but see *West* v. *Louisiana,* 194 U. S. 258 (1904).

[4] This is not merely a case of prior decisions that may have been incorrectly decided or rationalized. The unworkability of constitutionalizing any aspect of the conventional hearsay rule means what is at stake is the future of sound constitutional development in this area. Cf. *Swift & Co.* v. *Wickham,* 382 U. S. 111, 116 (1965), where we noted the mischief of "perpetuation of an unworkable

tation Clause comes to us on faded parchment. History seems to give us very little insight into the intended scope of the Sixth Amendment Confrontation Clause. Commentators have been prone to slide too easily from confrontation to cross-examination.

Against this amorphous backdrop I reach two conclusions. First, the Confrontation Clause of the Sixth Amendment reaches no farther than to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial. Second, even were this conclusion deemed untenable as a matter of Sixth Amendment law, it is surely agreeable to Fourteenth Amendment "due process," which, in my view, is the constitutional framework in which state cases of this kind should be judged. For it could scarcely be suggested that the Fourteenth Amendment takes under its umbrella all common-law hearsay rules and their exceptions.

I begin with the Sixth Amendment, and defer until Parts III and IV the application of these principles to the instant case.

I

The Confrontation Clause of the Sixth Amendment is not one that we may assume the Framers understood as the embodiment of settled usage at common law. Cf. my dissenting opinion in *Baldwin* v. *New York, ante,* p. 117. Such scant evidence as can be culled from the usual sources suggests that the Framers understood "confrontation" to be something less than a right to exclude hearsay, and the common-law signifi-

rule." *Moragne* v. *States Marine Lines,* 398 U. S. 375 (1970); *Boys Markets* v. *Retail Clerks,* 398 U. S. 235 (1970); my dissenting opinion in *Baldwin* v. *New York, ante,* p. 117, and my separate opinion in *Welsh* v. *United States,* 398 U. S. 333, 344 (1970), and my dissenting opinion in *Desist* v. *United States,* 394 U. S. 244, 256 (1969).

cance of the term is so ambiguous as not to warrant the assumption that the Framers were announcing a principle whose meaning was so well understood that this Court should be constrained to accept those dicta in the common law that equated confrontation with cross-examination.

### A

The text of the Sixth Amendment reads: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Simply as a matter of English the clause may be read to confer nothing more than a right to meet face to face all those who appear and give evidence at trial.[5] Since, however, an extrajudicial declarant is no less a "witness," the clause is equally susceptible of being interpreted as a blanket prohibition on the use of any hearsay testimony.

Neither of these polar readings is wholly satisfactory, still less compelling. Similar guarantees to those of the Sixth Amendment are found in a number of the colonial constitutions [6] and it appears to have been assumed that a confrontation provision would be included in the Bill of Rights that was to be added to the Constitution after ratification.[7] The Congressmen who drafted the Bill of

---

[5] The Georgia Constitution of 1877 lends some support for this restricted reading of confrontation. See Art. I, § 1, ¶ 5, which provided that the accused "shall be confronted with the witnesses *testifying* against him . . . ." (Emphasis added.) The natural reading of the provision, phrased as it is, would be to restrict the guarantee to individuals who are appearing in court.

[6] Massachusetts, New Hampshire, North Carolina, Maryland, and Virginia all included in their early constitutions a confrontation provision. See F. Heller, The Sixth Amendment 22–24 (1951). The documents are reprinted in F. Thorpe, The Federal and State Constitutions *passim* (1909). Wigmore has collected the state provisions. 5 J. Wigmore, Evidence § 1397, at 127–130 (3d ed. 1940).

[7] See 1 J. Elliot's Debates 328, 334 (1876).

Rights amendments were primarily concerned with the political consequences of the new clauses and paid scant attention to the definition and meaning of particular guarantees. Thus, the Confrontation Clause was apparently included without debate along with the rest of the Sixth Amendment package of rights—to notice, counsel, and compulsory process—all incidents of the adversarial proceeding before a jury as evolved during the 17th and 18th centuries.[8] If anything, the confrontation guarantee may be thought, along with the right to compulsory process, merely to constitutionalize the right to a defense as we know it, a right not always enjoyed by the accused, whose only defense prior to the late 17th century was to argue that the prosecution had not completely proved its case.[9] See H. Stephen, "The Trial of

---

[8] See 1 Annals of Cong. (1789–1790). Thus, my own research satisfies me that the prevailing view—that the usual primary sources and digests of the early debates contain no informative material on the confrontation right—is correct. Note, Confrontation and the Hearsay Rule, 75 Yale L. J. 1434, 1436 n. 10 (1966); Note, Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials, 113 U. Pa. L. Rev. 741, 742 (1965); Note, Confrontation, Cross-Examination, And the Right to Prepare a Defense, 56 Geo. L. J. 939, 953 (1968). For a review of the history of confrontation at English common law see Pollitt, The Right of Confrontation: Its History and Modern Dress, 8 J. Pub. L. 381 (1959).

[9] See H. Stephen, "The Trial of Sir Walter Raleigh," Transactions of the Royal Historical Society 172, 184 (4th ser. Vol. 2, 1919). In discussing Raleigh's trial Stephen notes, "The modern reader of Raleigh's trial is struck by the fact that he had no assistance from counsel. He likewise would not have been allowed to call witnesses had he wished to do so. . . . [The accused was] defended by the argument that the case against [him] had to be completely proved. If this was done no witnesses or counsel on the other side need be attended to; if it was not done none were needed." See also Heller, *supra,* n. 6, at 106–107, and the remarks of Governor Randolph at the Virginia ratification convention reported at 3 J. Elliot's Debates 467 (1876).

Sir Walter Raleigh," Transactions of the Royal Historical Society 172, 184 (4th ser. Vol. 2, 1919); F. Heller, The Sixth Amendment 106–107 (1951). Such glimmer of light as history may be thought to shed comes from the brief congressional colloquy on the reach of the companion guarantee of compulsory process. The debate suggests that this also broad and sweeping right was understood to be qualified by an availability requirement. After what is now the Sixth Amendment was put on the floor, the annals report the following:

"Mr. BURKE moved to amend this proposition in such a manner as to leave it in the power of the accused to put off the trial to the next session, provided he made it appear to the court that the evidence of the witnesses, for whom process was granted but not served, was material to his defence.

"Mr. HARTLEY said, that in securing him the right of compulsory process, *the Government did all it could; the remainder must lie in the discretion of the court.*

"Mr. SMITH, of South Carolina, thought the regulation would come properly in, as part of the Judicial system." 1 Annals of Cong. 756. (Emphasis added.)

In the face of this colloquy I cannot accept Professor Heller's assertion in his book on the Sixth Amendment attributing to the Framers a sweeping intent to prevent "introduction of evidence given by witnesses whom the accused has not had an opportunity to cross-examine," *supra,* at 105. So far as I have been able to ascertain, this thesis finds support only in the assumption, traceable to Professor Hadley,[10] that: "The right of the accused in a

---

[10] Hadley, The Reform of Criminal Procedure, 10 Proceedings of the Academy of Political Science 396, 400–401 (1923). Hadley's brief remarks would seem to indicate that the abuse that provoked concern was the use of affidavit and deposition testimony.

criminal prosecution to be confronted with the witnesses against him did not originate with the provision of the Sixth Amendment, but was a common law right which had gained recognition as a result of the abuses in the trial of Sir Walter Raleigh." *Id.*, at 104. Heller's approach, resting as it does essentially on assertion,[11] is neither persuasive as a historical reading, nor tenable in view of decisions by this Court that have held that the confrontation right is not abridged by the use of hearsay that would not have satisfied the dying-declaration exception, which was, according to Heller, the only apparent extant exception to the hearsay exclusionary rule at the time the Sixth Amendment was ratified.[12]

Wigmore's more ambulatory view—that the Confrontation Clause was intended to constitutionalize the hearsay rule and all its exceptions as evolved by the courts— rests also on assertion without citation, and attempts to settle on ground that would appear to be equally infirm

---

[11] The only support offered for this reading is the assertion that the Framers were concerned to prevent the abuses that occurred at the infamous treason trial of Sir Walter Raleigh. The abuses there, however, went far beyond a conviction based on hearsay. As one commentator has noted, the reams of deposition testimony given by Raleigh's alleged accomplice, who turned State's evidence, contained only innuendo and no credible assertion of substance sufficient to support a verdict. See Stephen, "The Trial of Sir Walter Raleigh," *supra*, n. 9. In this light, the Sixth Amendment guarantee might well be read as establishing a basic presumption of producing witnesses without dignifying every hearsay ruling with constitutional significance.

[12] Heller, *supra*, n. 6, at 105, citing H. Rottschaefer, Handbook of American Constitutional Law 796 (1939). This view is open to question. Wigmore, for one, takes the position that several exceptions to the hearsay rule existed as of the time the Sixth Amendment was adopted. 5 Wigmore, Evidence § 1397, at 130.

as a matter of logic.[13]  Wigmore's reading would have the practical consequence of rendering meaningless what was assuredly in some sense meant to be an enduring guarantee.  It is inconceivable that if the Framers intended to constitutionalize a rule of hearsay they would have licensed the judiciary to read it out of existence by creating new and unlimited exceptions.

From the scant information available it may tentatively be concluded that the Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, trials by anonymous accusers, and absentee witnesses.  That the Clause was intended to ordain common law rules of evidence with constitutional sanction is doubtful, notwithstanding English decisions that equate confrontation and hearsay.  Rather, having established a broad principle, it is far more likely that the Framers anticipated it would be supplemented, as a matter of judge-made common law, by prevailing rules of evidence.

## B

*Judicial Precedent.*—The history tending to suggest that *availability* underlies the confrontation right, as discussed above, is, in my view, confirmed by a circumspect analysis of the early decisions of this Court.[14]

---

[13] The basis of Wigmore's assertion is that the only right to confrontation known at common law was that enshrined in the hearsay rule.  He concludes that in view of the seemingly absolute prohibition on the use of hearsay declarations, it is impossible to apply literally to the Confrontation Clause and that the Framers intended confrontation to mean common-law hearsay principles.  See 5 Wigmore, Evidence § 1397, at 130–131.

[14] The early decisions and recent cases are replete with dicta to the effect that confrontation is equivalent to cross-examination. Instead of treating cases like *Brookhart* v. *Janis, supra; Pointer* v. *Texas, supra;* and *Douglas* v. *Alabama, supra;* as denials of "due process," see *infra,* the Court has employed sweeping language, and said, for example, "a major reason underlying the constitutional

The early decisions that consider the confrontation right at any length all involved *ex parte* testimony submitted by deposition and affidavit. See *Reynolds* v. *United States,* 98 U. S. 145 (1879); *Mattox* v. *United States,* 156 U. S. 237 (1895); *Motes* v. *United States,* 178 U. S. 458 (1900); *Kirby* v. *United States,* 174 U. S. 47 (1899).[15] It was in this context that Mr. Justice Brown

---

confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Pointer* v. *Texas,* 380 U. S., at 406–407. This kind of broad language, tending to equate confrontation and cross-examination, and the holding in *Bruton* have conjured the spectre of the constitutionalization of the hearsay rule that the dissent is apparently willing to treat with.

It is not surprising that confrontation and hearsay have been considered fungible. The labels were not until recently likely to affect the result in a federal trial. See comment in the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates 156 (1969). Cf. *Alford* v. *United States,* 282 U. S. 687 (1931) (right to cross-examine not treated as a denial of confrontation).

The portent of the label now emerges to the fore in federal cases, however, against the backdrop of recent developments that accord special treatment to constitutional errors, see *Harrington* v. *California,* 395 U. S. 250 (1969) (harmless error); *Chapman* v. *California,* 386 U. S. 18 (1967); *Kaufman* v. *United States,* 394 U. S. 217, 226 (1969) (collateral relief), and, for the States, in the context of incorporation, which makes every hearsay ruling a potential 28 U. S. C. § 2254 issue. An additional consequence of constitutionalizing the hearsay rules would be to put them beyond the reach of Congress. But see *Katzenbach* v. *Morgan,* 384 U. S. 641 (1966).

[15] Only *Kirby* did not, strictly speaking, involve the use of deposition testimony. In Kirby's case the Government sought to introduce a judgment of conviction obtained against three perpetrators of a theft in order to prove that property found in Kirby's possession was, in fact, stolen. In *Reynolds* the Court held that an accused cannot complain about the introduction of prior recorded testimony when the witness' absence is procured by the defense. In *Mattox* the Court, analogizing to the exception to the hearsay rule for dying declarations, held admissible prior recorded testimony taken under oath and subjected to cross-examination where the witness

in an oft-quoted passage from *Mattox* v. *United States* set forth as the primary objective of the constitutional guarantee, the prevention of "depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but also of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 156 U. S., at 242–243. See also *Dowdell* v. *United States*, 221 U. S.

---

had died since the first trial. In *Motes* the Court declined to countenance testimony taken subject to cross-examination where it appeared the Government might have produced the witness.

Most later cases have also involved written testimony. See, *e. g.*, *Barber* v. *Page, supra; Pointer* v. *Texas, supra; Douglas* v. *Alabama, supra* (confession); *Stein* v. *New York*, 346 U. S. 156, 194 (1953) (confession); *West* v. *Louisiana*, 194 U. S. 258 (1904); cf. *Greene* v. *McElroy*, 360 U. S. 474 (1959). Other problems treated under the rubric of confrontation have included, *inter alia*, the exclusion of the accused from his trial, *In re Oliver*, 333 U. S. 257 (1948); *Brookhart* v. *Janis, supra;* cf. *Snyder* v. *Massachusetts*, 291 U. S. 97 (1934) (a viewing); *Parker* v. *Gladden*, 385 U. S. 363 (1966) (improper remarks by bailiff); *Turner* v. *Louisiana*, 379 U. S. 466 (1965).

That, historically, the primary concern was the possibility of trial by affidavit may be evidenced by several early state constitutional provisions that specifically made exceptions to confrontation by providing for use of depositions when the witness is unavailable. See, *e. g.*, California Const., 1879, Art. I, § 13 ("The Legislature shall have power to provide for the taking, in the presence of the party accused and his counsel, of depositions of witnesses in criminal cases, other than cases of homicide when there is reason to believe that the witness, from inability or other cause, will not attend at the trial."); Colorado Const., 1876, Art. II, § 16; Montana Const., 1889, Art. III, §§ 16, 17; Ohio Const., 1851, Art. I, § 10; Texas Const., 1876, Art. I, § 10, as amended 1918.

325, 330 (1911); *Snyder* v. *Massachusetts,* 291 U. S. 97, 107 (1934).

This restricted reading of the clause cannot be defended—taking, as it does, a metaphysical approach, one that attempts to differentiate between affidavits, as a substitute for first-hand testimony, and extra-judicial testimonial utterances. Indeed, the problems with the latter are somewhat greater, and the difficulty in establishing accurately what an extra-judicial declarant said has sometimes been considered an infirmity of hearsay evidence. See C. McCormick, Evidence § 224, at 458 (1954). Conceptual difficulties aside, it would seem that the early recognition of the dying declaration as an exception to the Confrontation Clause, *Mattox* v. *United States, supra; Kirby* v. *United States, supra; Robertson* v. *Baldwin,* 165 U. S. 275 (1897), proceeded on the assumption that extrajudicial testimonial declarations were also a concern of the Sixth Amendment.[16]

Notwithstanding language that appears to equate the Confrontation Clause with a right to cross-examine, and, by implication, exclude hearsay, the early holdings and dicta can, I think, only be harmonized by viewing the confrontation guarantee as being confined to an availability rule, one that requires the production of a witness when he is available to testify. This view explains the recognition of the dying declaration exception, which dispenses with any requirement of cross-examination, and the refusal to make an exception for prior recorded statements, taken subject to cross-examination

---

[16] Interestingly in *Hopt* v. *Utah,* 110 U. S. 574 (1884), the Court, speaking through the same Justice who wrote *Kirby,* in holding that it was error to permit a surgeon to testify that he had examined the body of the alleged victim of the charged homicide when the surgeon's knowledge as to the identity of the deceased came from a third party, relied only on hearsay principles and made no allusion to the Confrontation Clause.

by the accused, when the witness is still available to testify. Compare *Mattox* v. *United States, supra,* with *Motes* v. *United States, supra.*

This rationalization of the early decisions is not only justified by logic but also anchored in precedent. In *West* v. *Louisiana,* 194 U. S. 258 (1904), this Court in reviewing its early confrontation decisions emphasized *availability* as the thread that tied them together. *West* involved the admission into evidence at trial of deposition testimony, taken subject to cross-examination and under oath, where the deponent was "permanently absent from the State and was a non-resident thereof, and . . . his attendance could not be procured." *Ibid.* Referring, *inter alia,* to *Motes, Mattox, Kirby,* and *Reynolds,* the Court concluded that "in not one of those cases was it held that, under facts such as [were before the Court], there would have been a violation of the Constitution in admitting the deposition in evidence." 194 U. S., at 266. That the uppermost consideration was the availability of the witness is further underscored by the *West* discussion of the common-law rule that admitted deposition testimony "upon proof being made to the satisfaction of the court that the witness was at the time of the trial dead, insane, too ill ever to be expected to attend the trial, or kept away by the connivance of the defendant." 194 U. S., at 262.[17]

---

[17] That the critical element is *availability* cannot be doubted. The *West* opinion does not emphasize the opportunity to cross-examine at the time of taking the depositions, and, as already remarked, that would appear to be of secondary concern given the recognition in *Mattox* of the dying declaration exception. *West,* moreover, perforce stands for the proposition that confrontation is indifferent to any limitations on the nature of cross-examination at a preliminary hearing that underlie the dissent in this case.

In view of the extended discussion of federal precedents and the express rejection of West's contentions thereunder, for present pur-

## II

Recent decisions have, in my view, fallen into error on two scores. As a matter of jurisprudence I think it unsound, for reasons I have often elaborated, see, *e. g.,* my dissenting opinions in *Duncan* v. *Louisiana,* 391 U. S. 145, 171 (1968), and *Baldwin* v. *New York, ante,* p. 117, to incorporate *as such* the guarantees of the Bill of Rights into the Due Process Clause. While, in this particular instance, this would be of little practical consequence if the Court had confined the Sixth Amendment guarantee to an "availability" requirement, some decisions have, unfortunately, failed to separate, even as a federal matter, restrictions on the abuse of hearsay testimony, part of the due process right of a reliable and trustworthy conviction, and the right to confront an available witness. See n. 20, *infra.*

By incorporating into the Fourteenth Amendment its misinterpretation of the Sixth Amendment these decisions have in one blow created the present dilemma, that of bringing about a potential for a constitutional rule of hearsay for both state and federal courts. However ill-advised would be the constitutionalization of hearsay rules in federal courts, the undesirability of imposing those brittle rules on the States is manifest. Given the ambulatory fortunes of the hearsay doctrine, evidenced by the disagreement among scholars over the value of excluding hearsay and the trend toward liberalization of the exceptions,[18] it would be most unfortunate for this

poses it is of no consequence that the case involved a state criminal prosecution and that the Court declined to hold the Sixth Amendment applicable *as such.*

[18] While the importance of the right to cross-examine is not to be minimized, see 5 Wigmore, *supra,* § 1367, the desirability of excluding otherwise relevant evidence simply because it has not been tested by cross-examination has been frequently questioned. See generally C. McCormick, Evidence §§ 224, 302–305, at 459, 628–634 (1954);

Court to limit the flexibility of the States and choke experimentation in this evolving area of the law. Cf. *Baldwin* v. *New York, supra.*[19]  I adhere to what I con-

ALI Model Code of Evidence Rules 502, 503, and Comment, at 231–232 (1942); Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8–03, at 173 (1969); Uniform Rules of Evidence, Rule 63 (liberalized exceptions). See also James, The Role of Hearsay in a Rational Scheme of Evidence, 34 Ill. L. Rev. 788 (1940); Chadbourn, Bentham and The Hearsay Rule—A Benthamic View of Rule 63 (4)(c) of the Uniform Rules of Evidence, 75 Harv. L. Rev. 932, 942–951 (1962) (Uniform Rules too restricted); McCormick, Hearsay, 10 Rutgers L. Rev. 620, 630 (1956) (commenting on Uniform Rules); cf. Quick, Evidence, 6 Wayne L. Rev. 163, 168 (1959) (apparently critical of the trend toward admissibility).  Judges, too, have disagreed on the desirability of excluding hearsay, compare Chief Justice Marshall's view set forth in *Queen* v. *Hepburn,* 7 Cranch 290 (1813), and that of Justice Story in *Ellicott* v. *Pearl,* 10 Pet. 412, 436 (1836), with that of Judge Learned Hand set forth in his lecture to the Association of the Bar of the City of New York, The Deficiencies of Trials to Reach the Heart of the Matter, 3 Lectures on Legal Topics, 1921–1922, p. 89 (1926).

[19] See Report of the New Jersey Supreme Court Committee on Evidence (1963).  The potential for suffocating creative thinking is suggested by the commentary on the Uniform Rules of Evidence by the California Law Revision Commission.  Prior to *Pointer* in 1962 the commission noted that despite the federal rule, it was free, consistent with due process, to consider and adopt Uniform Rule 63 (3)(b)(ii), providing for use of testimony from a former trial when there was an identity of issues and reason to believe there would have been adequate cross-examination and the declarant is unavailable.  The commission recommended adoption of Rule 63 (3) (b)(ii).  See Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (1962), in 4 California Law Revision Commission: Reports, Recommendations and Studies 454–457 (1963). The provision was omitted from the new evidence code with a comment that a defendant in a criminal prosecution should not be made to rely on another individual's cross-examination.  Evidence Code with Official Comments 1250 (California Law Revision Commission 1965).  While this Court's decision in *Pointer* was apparently not responsible for the decision to omit this provision,

sider to be the sound view expressed in *Stein* v. *New York,* 346 U. S. 156, 196 (1953): "The hearsay-evidence rule, with all its subtleties, anomalies and ramifications, [should] not be read into the Fourteenth Amendment."

What I would hold binding on the States as a matter of due process is what I also deem the correct meaning of the Sixth Amendment's Confrontation Clause—that a State may not in a criminal case use hearsay when the declarant is available. See *West* v. *Louisiana, supra.*[20]

since the final commission report was submitted in January 1965, prior to *Pointer,* it is clear that were hearsay constitutionalized, California could not even have considered this innovation.

[20] This is not to say that the right to cross-examination is not an element of due process. *Alford* v. *United States,* 282 U. S. 687 (1931); *In re Oliver,* 333 U. S. 257 (1948); *Snyder* v. *Massachusetts,* 291 U. S. 97 (1934); *Smith* v. *Illinois,* 390 U. S. 129 (1968). Due process does not permit a conviction based on no evidence, *Thompson* v. *City of Louisville,* 362 U. S. 199 (1960); *Nixon* v. *Herndon,* 273 U. S. 536 (1927), or on evidence so unreliable and untrustworthy that it may be said that the accused had been tried by a kangaroo court. Cf. *In re Oliver, supra; Turner* v. *Louisiana,* 379 U. S. 466 (1965).

In *Stovall* v. *Denno,* 388 U. S. 293 (1967), and *Simmons* v. *United States,* 390 U. S. 377 (1968), the underlying principle was refined. The Court there recognized that evidence of identification—always a critical issue in a criminal trial—should not be received if the circumstances of a pretrial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification. By the same token I would not permit a conviction to stand where the critical issues at trial were supported only by *ex parte* testimony not subjected to cross-examination, and not found to be reliable by the trial judge. Cf. *United States* v. *Kearney,* 136 U. S. App. D. C. 328, 420 F. 2d 170 (1969). It will, of course, be the unusual situation where the prosecution's entire case is built upon hearsay testimony of an unavailable witness. In such circumstance the defendant would be entitled to a hearing on the reliability of the testimony. Cf. ALI, Model Code of Evidence; *United States* v. *Kearney, supra.* Due process also requires that the defense be given ample opportunity to alert the jury

There is no reason in fairness why a State should not, as long as it retains a traditional adversarial trial, produce a witness and afford the accused an opportunity to cross-examine him when he can be made available. That this principle is an essential element of fairness is attested to not only by precedent, *Motes* v. *United States, supra; Barber* v. *Page, supra; Smith* v. *Illinois, supra,* but also by the traditional and present exceptions to the hearsay rule which recognize greater flexibility for receiving evidence when the witness is not available. Furthermore it accommodates the interest of the State in making a case, yet recognizes the obligation to accord the accused the fullest opportunity to present his best defense.[21] For those rare cases where a conviction occurs after a trial where no credible evidence could be said to justify the result, there remains the broader due process requirement that a conviction cannot be founded on no evidence. See n. 20, *supra.*

---

to the pitfalls of accepting hearsay at face value, and the defendant would, of course, upon request be entitled to cautionary instructions. Cf. § 6.17, Manual on Jury Instructions, 33 F. R. D. 601 (missing witnesses). On the basis of this approach I would stand by my concurrence in the result in *Pointer* v. *Texas, supra,* both because the out-of-court statement formed the bulk of the prosecutor's case and also because there was no showing that the witness could not have been made available for cross-examination. See also *Brookhart* v. *Janis,* 384 U. S. 1 (1966); *Barber* v. *Page,* 390 U. S. 719 (1968). The result in *Douglas* v. *Alabama,* to which I also still adhere, can be rationalized under this test since there the inadmissible confession "constituted the only direct evidence" that petitioner had committed the murder. 380 U. S., at 419. An additional factor would move me to stand by *Douglas.* It was a case of prosecutorial misconduct. By placing the witness on the stand and reading in the confession, the prosecutor, in effect, increased the reliability of the confession in the jury's eyes in view of the witness' apparent acquiescence as opposed to repudiation.

[21] Cf. *Napue* v. *Illinois,* 360 U. S. 264 (1959); *Mooney* v. *Holohan,* 294 U. S. 103 (1935).

### III

Putting aside for the moment the "due process" aspect of this case, see n. 20, *supra,* it follows, in my view, that there is no "confrontation" reason why the prosecution should not use a witness' prior inconsistent statement for the truth of the matters therein asserted. Here the prosecution has produced its witness, Porter, and made him available for trial confrontation. That, in my judgment, perforce satisfies the Sixth Amendment. Indeed, notwithstanding the conventional characterization of an available witness' prior out-of-court statements as hearsay when offered affirmatively for the truth of the matters asserted, see *Hickory* v. *United States,* 151 U. S. 303, 309 (1894); *Southern R. Co.* v. *Gray,* 241 U. S. 333, 337 (1916); *Bridges* v. *Wixon,* 326 U. S. 135 (1945), this is hearsay only in a technical sense since the witness may be examined at the trial as to the circumstances of memory, opportunity to observe, meaning, and veracity. See Comment, Model Code of Evidence, *supra,* n. 18. I think it fair to say that the fact that the jury has no opportunity to reconstruct a witness' demeanor at the time of his declaration, and the absence of oath are minor considerations.

The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts, for reasons

stated in Part II, I think confrontation is nonetheless satisfied.[22]

## IV

I turn finally to the question of whether this conviction stands on such unreliable evidence that reversal is required. Cf. *Stovall* v. *Denno,* 388 U. S. 293 (1967); *Thompson* v. *City of Louisville,* 362 U. S. 199 (1960). I cannot conclude that the preliminary hearing testimony was obtained under circumstances, as such, so unreliable that its admission requires reversal as a matter of due process, even though it was crucial to the central issue in the case. Compare *Stovall* v. *Denno, supra; Simmons* v. *United States,* 390 U. S. 377 (1968). The statement given to Officer Wade does, however, raise such a possibility. I accordingly would remand the case to the California Supreme Court for consideration of that question and, whether or not it deems the second statement too unreliable to have been admitted, to decide whether this conviction should be reversed under California law for want of sufficient evidence to sustain a conviction beyond a reasonable doubt. See *In re Winship,* 397 U. S. 358 (1970).

MR. JUSTICE BRENNAN, dissenting.

Respondent was convicted of violating California Health and Safety Code § 11532 which prohibits furnishing narcotics to a minor. The only issue at his trial was

---

[22] The lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness. *Barber* v. *Page, supra;* cf. *Mullane* v. *Central Hanover Trust Co.,* 339 U. S. 306 (1950). A good-faith effort is, of course, necessary, and added expense or inconvenience is no excuse. It should also be open to the accused to request a continuance if the unavailability is only temporary. Cf. *Peterson* v. *United States,* 344 F. 2d 419, 425 (C. A. 5th Cir. 1965).

whether he had in fact furnished Porter, a minor, with marihuana. On the direct testimony, it does not appear that he could have been constitutionally convicted, for it seems that there would have been insufficient evidence to sustain a finding of guilt. The State presented three witnesses to prove respondent's guilt: Porter and Officers Wade and Dominguez. As the Court states, Porter testified at trial that "he was uncertain how he obtained the marihuana, primarily because he was at the time on 'acid' (LSD), which he had taken 20 minutes before respondent phoned. Porter claimed that he was unable to remember the events that followed the phone call, and that the drugs he had taken prevented his distinguishing fact from fantasy." *Ante,* at 152. Officer Wade had no personal knowledge of the facts of the alleged offense; he was able only to report the content of an extrajudicial statement that Porter had made to him. Officer Dominguez testified about an incident wholly separate from the alleged offense; his testimony was consistent with the defense account of the facts.[1]

Thus, the evidence on which respondent was found guilty consisted of two pretrial statements by Porter. The first was the account given Officer Wade. It was unsworn and not subject to defense cross-examination. Porter's demeanor while making the statement was not observed by the trial factfinder. The statement was made under unreliable circumstances—it was taken four days after Porter's arrest for selling marihuana to an undercover agent and while he was still in custody.[2] No

---

[1] See *People* v. *Green,* 70 Cal. 2d 654, 657–658, 451 P. 2d 422, 424 (1969).

[2] Porter declared under oath on May. 12, 1967, that "when I was arrested and was in custody, the police kept telling me that they knew it was JOHN GREEN I was involved with and that unless I implicated him that they would see that I was out of circulation for a long time . . . ."

written transcript of the statement was introduced at trial. Officer Wade recounted it simply as he remembered Porter's words.[3] The second statement was given by Porter during respondent's preliminary hearing. It was sworn and subject to cross-examination. Defense counsel, however, did not engage in a searching examination.[4] Again, Porter's demeanor while he made this statement was unobserved by the trial factfinder. The statement was put before this factfinder, of course, when at various points during Porter's direct examination at trial the prosecutor read excerpts from his preliminary hearing testimony.

Accordingly, the facts of this case present two questions regarding the application of California Evidence Code § 1235: first, whether the Confrontation Clause permits a witness' extrajudicial statement to be admitted at trial as substantive evidence when the witness claims to be unable to remember the events with which his prior statement dealt, and, second, whether the clause permits a witness' preliminary hearing statement, made under oath and subject to cross-examination, to be introduced at trial as substantive evidence when the witness claims to be unable to remember the events with which the statement dealt. In my view, neither statement can be introduced without unconstitutionally restricting the right of the accused to challenge incriminating evidence in the presence of the factfinder who will determine his guilt or innocence.

---

[3] Cf. *Goldberg* v. *Kelly*, 397 U. S. 254, 269 (1970), where the Court stated that "[t]he second-hand presentation to the decision maker by the caseworker has its own deficiencies; since the caseworker usually gathers the facts upon which the charge of ineligibility rests, the presentation of the recipient's side of the controversy cannot safely be left to him."

[4] No question, for example, was asked Porter by either the defense or prosecution as to whether he was under the influence of drugs at the time of the alleged offense.

## I

The Court points out that "the particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact." *Ante,* at 156. A face-to-face encounter, of course, is important, not so that the accused can view at trial his accuser's visage, but so that he can directly challenge the accuser's testimony before the factfinder. See 5 J. Wigmore, Evidence §§ 1364, 1365 (3d ed. 1940). We made this clear in *Mattox* v. *United States,* 156 U. S. 237, 242–243 (1895), where we stressed the necessity of "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

There is no way to test the recollection and sift the conscience of a witness regarding the facts of an alleged offense if he is unwilling or unable to be questioned about them; [5] defense counsel cannot probe the story of a silent witness and attempt to expose facts that qualify or discredit it. The impetus to truth inherent in the oath sworn by the witness, in the penalty for perjury, and in

---

[5] If, on the other hand, the witness is willing and able to testify at trial about the operative events, the demands of the Confrontation Clause may be met, even though the witness contradicts his pretrial assertions. I see no need on the facts presented here, however, to resolve this issue.

the serious purpose of the courtroom have no effect on him so far as the facts of the alleged offense are concerned. Nor, obviously, can the factfinder view his demeanor while he recounts the facts. If the witness claims that he is unable to remember the pertinent events, it is true that this assertion can be challenged, and that in making and defending it the witness will be affected by his oath, the penalty for perjury, and the courtroom atmosphere. It is equally true that the trial factfinder can observe and weigh the witness' demeanor as he makes and defends such a claim. But a decision by the factfinder that the witness is lying sheds no direct light on the accuracy of any pretrial statement made by him; that statement remains without the support or discredit that can come only from the probing of its factual basis while the witness stands face to face with the accused and the factfinder. If the factfinder decides that the witness is honestly unable to remember the events in question, that conclusion may or may not directly guide the factfinder in assessing the reliability of the pretrial statement. If, for example, the witness were unable to remember the pertinent facts because he was under the influence of drugs at the time they occurred, the factfinder might reasonably disregard any pretrial account of these events given by the witness.

This Court has already explicitly held in *Douglas* v. *Alabama*, 380 U. S. 415, 419–420 (1965), that the Confrontation Clause forbids the substantive use at trial of a prior extrajudicial statement, when the declarant is present at trial but unwilling to testify about the events with which his prior statement dealt. In *Douglas* the prosecution introduced the alleged confession of the accused's supposed accomplice, one Loyd, who was unwilling to testify about the pertinent events for fear of self-incrimination. We held that "petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied

him the right of cross-examination secured by the Confrontation Clause. Loyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so . . . . [E]ffective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer."

For purposes of the Confrontation Clause, there is no significant difference between a witness who fails to testify about an alleged offense because he is unwilling to do so and a witness whose silence is compelled by an inability to remember. Both are called to the stand to testify. The jury may view the demeanor of each as he indicates why he will not discuss the crucial events. But in neither instance are the purposes of the Confrontation Clause satisfied, because the witness cannot be questioned at trial concerning the pertinent facts. In both cases, if a pretrial statement is introduced for the truth of the facts asserted, the witness becomes simply a conduit for the admission of stale evidence, whose reliability can never be tested before the trial factfinder by cross-examination of the declarant about the operative events, and by observation of his demeanor as he testifies about them.

Unlike the Court, I see no reason to leave undecided the inadmissibility of Porter's statements to Officer Wade. We have before us the transcript of Porter's trial testimony. He could not remember the operative events. Whether he feigned loss of memory is irrelevant to respondent's confrontation claim. Under *Douglas* his statement to Officer Wade must be excluded as substantive evidence.[6]

---

[6] The fact that in appropriate circumstances such a statement may be admitted to impeach a witness is not as anomalous as the Court suggests, *ante*, at 164. If, for example, Porter's pretrial statements

## II

The question remains whether the fact that a pretrial statement was obtained at a preliminary hearing, under oath and subject to cross-examination, distinguishes that statement for confrontation purposes from an extrajudicial statement. I thought that our decision in *Barber* v. *Page,* 390 U. S. 719 (1968), resolved this issue. In *Barber* we stated that confrontation at a preliminary hearing cannot compensate for the absence of confrontation at trial, because the nature and objectives of the two proceedings differ significantly. In that case, the prosecution argued that the accused had waived his right to cross-examination at the preliminary hearing. Though we rejected that argument, to put beyond doubt the necessity for confrontation *at trial,* we stated:

> "Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross-examined [the witness] at the preliminary hearing. . . . The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Id.,* at 725.[7]

had been admitted at respondent's trial solely for impeachment purposes, they would not have provided substantive proof of his guilt, and, as noted, there would then very likely have been insufficient evidence to sustain his conviction.

[7] The California Supreme Court in the present case discussed in more detail the distinctions between a preliminary hearing and trial, stating that "the purpose of a preliminary hearing is not a full exploration of the merits of a cause or of the testimony of the witnesses. It is designed and adapted solely to answer the

We applied *Barber* retroactively in *Berger* v. *California,*
393 U. S. 314 (1969), a case in which defense counsel
did have an opportunity to cross-examine the witness
at the preliminary hearing. We held, nonetheless, that
"[c]learly, petitioner's inability to cross-examine . . . at
trial may have had a significant effect on the 'integrity
of the fact-finding process.' " *Id.,* at 315.

Preliminary hearings in California are not atypical in
their nature and objectives:

> "In most California criminal prosecutions the pre-
> liminary examination is conducted as a rather per-
> functory uncontested proceeding with only one likely
> denouement—an order holding the defendant for
> trial. Only television lawyers customarily demolish
> the prosecution in the magistrate's court. The pros-
> ecution need show only 'probable cause,' a burden
> vastly lighter than proof beyond a reasonable doubt."
> *People* v. *Gibbs,* 255 Cal. App. 2d 739, 743–744,
> 63 Cal. Rptr. 471, 475 (1967).

It follows that the purposes of the Confrontation
Clause cannot be satisfied by a face-to-face encounter at

far narrower preliminary question of whether probable cause exists
for a subsequent trial. The judge in preliminary proceedings is
not required to be convinced of the defendant's guilt 'beyond a rea-
sonable doubt,' but need only look for reasonable credibility in the
charge against him. *A fortiori* a witness' testimony, though the only
evidence adduced, need not be convincing or credible beyond a
reasonable doubt, and cross-examination which would surely im-
peach a witness at trial would not preclude a finding of probable
cause at the preliminary stage. Even given the opportunity . . .
neither prosecution nor defense is generally willing or able to
fire all its guns at this early stage of the proceedings, for
considerations both of time and efficacy. . . . Indeed, it is seldom
that either party has had time for investigation to obtain posses-
sion of adequate information to pursue in depth direct or cross-
examination." 70 Cal. 2d, at 663, 451 P. 2d, at 428. See also
*Virgin Islands* v. *Aquino,* 378 F. 2d 540, 549 (C. A. 3d Cir. 1967).

the preliminary hearing. Cross-examination at the hearing pales beside that which takes place at trial. This is so for a number of reasons. First, as noted, the objective of the hearing is to establish the presence or absence of probable cause, not guilt or innocence proved beyond a reasonable doubt; thus, if evidence suffices to establish probable cause, defense counsel has little reason at the preliminary hearing to show that it does not conclusively establish guilt—or, at least, he had little reason before today's decision. Second, neither defense nor prosecution is eager before trial to disclose its case by extensive examination at the preliminary hearing; thorough questioning of a prosecution witness by defense counsel may easily amount to a grant of gratis discovery to the State. Third, the schedules of neither court nor counsel can easily accommodate lengthy preliminary hearings. Fourth, even were the judge and lawyers not concerned that the proceedings be brief, the defense and prosecution have generally had inadequate time before the hearing to prepare for extensive examination. Finally, though counsel were to engage in extensive questioning, a part of its force would never reach the trial factfinder, who would know the examination only second hand. As the California Supreme Court stated:

"[L]ost in a cold reading of the preliminary transcript is the more subtle yet undeniable effect of counsel's rhetorical style, his pauses for emphasis and his variations in tone, as well as his personal rapport with the jurors, as he pursues his cross-examination. For example, . . . while the lawyer 'must keep control of himself . . . [t]his does not mean that the cross-examiner never should fight with a witness, raise his voice, or become angry. Forensic indignation, whether expressed physically or verbally, may produce good results in special circumstances.' In addition, counsel may well conduct

his cross-examination in a different manner before a committing magistrate than before a trial court or jury. Thus, . . . counsel must always temper his cross-examination to the individual jurors, using their reactions as a guide to the most effective line of questioning. 'The cross-examiner must remember that he is a performer and the jurors are his audience. No good performer ignores his audience, and all performances are conducted for the purpose of favorably impressing the audience.'. . . We conclude that experience demonstrates the essentiality of truly contemporaneous cross-examination." 70 Cal. 2d, at 662–663, 451 P. 2d, at 427.

If cross-examination at the preliminary hearing rarely approximates that at trial, observation by the trial factfinder of the witness' demeanor as he gives his prior testimony is virtually nonexistent. Unless the committing magistrate is also the trial factfinder, the demeanor purpose of the Confrontation Clause is wholly negated by substituting confrontation at the preliminary hearing for confrontation at trial. And yet, in the words of the California court, "[i]t is because demeanor—attitude and manner—is a significant factor in weighing testimonial evidence that it is axiomatic the trier of fact, before whom the witness testified and was cross-examined . . . , is the sole judge of the credibility of a witness and of the weight to be given his testimony." *Id.*, at 662, 451 P. 2d, at 427. No such determination of credibility is possible when the witness comes before the trial factfinder by the reading of a cold transcript.

It appears, then, that in terms of the purposes of the Confrontation Clause, an equation of face-to-face encounter at the preliminary hearing with confrontation at trial must rest largely on the fact that the witness testified

at the hearing under oath, subject to the penalty for perjury, and in a courtroom atmosphere. These factors are not insignificant, but by themselves they fall far short of satisfying the demands of constitutional confrontation. Moreover, the atmosphere and stakes are different in the two proceedings. In the hurried, somewhat *pro forma* context of the average preliminary hearing, a witness may be more careless in his testimony than in the more measured and searching atmosphere of a trial. Similarly, a man willing to perjure himself when the consequences are simply that the accused will stand trial may be less willing to do so when his lies may condemn the defendant to loss of liberty. In short, it ignores reality to assume that the purposes of the Confrontation Clause are met during a preliminary hearing. Accordingly, to introduce preliminary hearing testimony for the truth of the facts asserted, when the witness is in court and either unwilling or unable to testify regarding the pertinent events, denies the accused his Sixth Amendment right to grapple effectively with incriminating evidence.

The Court's ruling, moreover, may have unsettling effects on the nature and objectives of future preliminary hearings. The California Court defined the problem: "Were we to equate preliminary and trial testimony one practical result might be that the preliminary hearing, designed to afford an efficient and speedy means of determining the narrow question of probable cause, would tend to develop into a full-scale trial. This would invite thorough and lengthy cross-examination, with the consequent necessity of delays and continuances to bring in rebuttal and impeachment witnesses, to gather all available evidence, and to assure generally that nothing remained for later challenge. In time this result would prostitute the accepted purpose of pre-

liminary hearings and might place an intolerable burden on the time and resources of the courts of first instance." 70 Cal. 2d, at 664, 451 P. 2d, at 428.

Conscientious defense counsel, aware that today's decision has increased the likelihood of the use of preliminary hearing testimony at trial, may well wish to conduct a full-scale, unlimited cross-examination of prosecution witnesses at the hearing. We held in *Coleman* v. *Alabama, ante,* p. 1, that an accused has a right to assistance of counsel during a preliminary hearing. And we have made clear that "it is a denial of the accused's constitutional right to a fair trial to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel." *White* v. *Ragen,* 324 U. S. 760, 764 (1945). In light of today's decision, may defense counsel be denied requests for delay that are reasonably necessary to enable him to conduct a thorough examination at the preliminary hearing? What limits, if any, may still be placed on the defense's use of the preliminary hearing as a discovery device to extract information from the prosecution that is reasonably necessary, not to a determination of probable cause, but to a rigorous examination of government witnesses? Do the requisites of "effective assistance of counsel" require defense counsel to conduct such an examination? [8]

---

[8] Beyond these problems, today's holding raises another practical difficulty: how extensive must cross-examination at the preliminary hearing be before constitutional confrontation is deemed to have occurred? Is the mere opportunity for face-to-face encounter sufficient? Perhaps so. The Court states that "respondent had every opportunity to cross-examine Porter as to his statement" at the hearing. *Ante,* at 165. Does that mean that if defense counsel fails to take advantage of the opportunity that the accused can subsequently be convicted at trial on the basis of wholly untested evidence? If more than an unexercised chance to cross-examine is required, how thorough and effective must the questioning be before it satisfies the Confrontation Clause? Is it significant,

The Court relies heavily on the traditional practice of admitting the prior testimony of a witness who is physically unavailable at trial. It finds no ground for distinguishing between the pretrial declarant who fails to testify at trial because he is not physically present and the pretrial declarant who, though present at trial, fails to testify because he is unwilling or unable to do so. The Court reasons that the "necessity" for the introduction of either declarant's prior statement is "the State's 'need' to introduce relevant evidence," and that the testimony's "reliability" rests "on the circumstances under which it was given—circumstances that remain unaffected regardless of whether the witness is present or absent at the later trial." *Ante,* at 167 n. 16. I disagree.

The State, obviously, does need to introduce relevant evidence. But the "necessity" that justifies the admission of pretrial statements is not the prosecution's need to convict, but the factfinder's need to be presented with reliable evidence to aid its determination of guilt or innocence. Whether a witness' assertions are reliable ordinarily has little or no bearing on their admissibility, for they are subject to the corrective influences of his demeanor and cross-examination. If, however, there is no possibility that his assertions can be so tested at trial, then their reliability becomes an important factor in deciding whether to permit their presentation to the factfinder. When a probability exists that incriminating pretrial testimony is unreliable, its admission, absent confrontation, will prejudicially distort the factfinding process.

The reliability of pretrial testimony, in turn, is not determined simply by the circumstances under which it

---

for example, that in the present case neither the defense nor prosecution explored the most elemental fact about Porter's testimony—the possibility that he was under the influence of drugs at the time of the alleged offense?

was given. It is also influenced by subsequent developments. If, for example, prior testimony is later disavowed by the declarant in an extrajudicial but convincing statement, it would be unrealistic to argue at a later trial, from which the declarant was physically absent, that the reliability of his prior testimony was unaffected by the intervening event.

The subsequent developments under consideration here are (1) failure to testify at trial because of physical unavailability and (2) failure to testify because of unwillingness to do so or inability to remember. In my view, these developments have very different implications for the reliability of prior testimony. Physical unavailability is generally a neutral factor; in most instances, it does not cast doubt on the witness' earlier assertions. Inability to remember the pertinent events, on the other hand, or unwillingness to testify about them, whether because of feigned loss of memory or fear of self-incrimination, does cast such doubt. Honest inability to remember at trial raises serious question about clarity of memory at the time of the pretrial statement. The deceit inherent in feigned loss of memory lessens confidence in the probity of prior assertions. And fear of self-incrimination at trial suggests that the witness may have shaped prior testimony so as to avoid dangerous consequences for himself. Reliability cannot be assumed simply because a prior statement was made at a preliminary hearing.

In sum, I find that Porter's real or pretended lapse of memory about the pertinent events casts serious doubt upon the reliability of his preliminary hearing testimony. It is clear that so long as a witness, such as Porter, cannot or will not testify about these events at trial, the accused remains unable to challenge effectively that witness' prior assertions about them. The probable unreliability of the prior testimony, coupled with the im-

possibility of its examination during trial, denies the accused his right to probe and attempt to discredit incriminating evidence. Accordingly, I would hold California Evidence Code § 1235 in violation of the Confrontation Clause to the extent that it permits the substantive use at trial of prior statements, whether extrajudicial or testimonial, when the declarant is present at trial but unable or unwilling to be questioned about the events with which the prior statements dealt. I would therefore affirm the reversal of respondent's conviction.