UNITED STATES of America ex rel. James Hugh HENSON, Jr., Petitioner,

v.

Warden Walter W. REDMAN, Respondent.

Civ. A. No. 76–141.

United States District Court, D. Delaware.

Sept. 14, 1976.

James Hugh Henson, Jr., pro se.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

## OPINION

STAPLETON, District Judge.

This is a petition for writ of habeas corpus by James Hugh Henson, a State of Delaware prisoner convicted of rape, sodomy, and kidnapping, alleging that his constitutional rights to a speedy trial and to be confronted with the witnesses against him were violated during the proceedings that resulted in his conviction and his current incarceration. Petitioner argues that the State's negligence in not indicting him for nine months after his arrest despite his attempts to obtain prompt disposal of the charges against him constituted a denial of his rights to a speedy trial. Petitioner further contends that the introduction into evidence at his trial of certain medical records reflecting the condition of the victim after the alleged attack without his being afforded the opportunity to confront the author of those records denied him his rights to be confronted with the witnesses against him.

Upon receipt of the petition, the Court ordered respondent to show cause why the writ of habeas corpus should not issue. Pursuant to that Order, respondent filed a motion to dismiss the speedy trial allegation for failure to exhaust available state court remedies in accordance with 28 U.S.C. § 2254(b). Respondent also filed an answer denying that the state court erred in admitting the medical records.

At the outset, I agree with respondent that petitioner has failed to exhaust his available state court remedies with respect to the speedy trial claim. Petitioner did appeal his state court conviction, which appeal was denied by the Supreme Court of Delaware. *Henson v. State of Delaware,*

332 A.2d 773 (1975). However, the record reflects that the speedy trial issue was not raised on that appeal.

Under Rule 35 of the Delaware Rules of Criminal Procedure, petitioner can still raise the speedy trial issue in the Delaware state courts and have that issue ultimately adjudicated by the Delaware Supreme Court.[1] Since petitioner still has a state court remedy available to him, his petition for writ of habeas corpus on the speedy trial issue must be dismissed.

Petitioner did raise the confrontation clause issue in his appeal to the Delaware Supreme Court and consequently that issue is properly before me. For the reasons set forth below, however, I find that the admission into evidence of the medical records in question did not violate petitioner's federal constitutional rights to be confronted with the witnesses against him and consequently that the remaining portion of his petition for writ of habeas corpus must also be dismissed.

Petitioner was convicted of kidnapping, rape and sodomy. The victim was petitioner's fourteen year old neighbor, who testified that petitioner forced her into his car, drove her to a secluded spot, and sexually assaulted her. Petitioner testified that the victim had voluntarily entered his car, that they had driven around, but that he had not had sexual relations with her.

At trial, over petitioner's objection,[2] the state introduced medical records reflecting the results of an emergency room examination of the victim performed by a physician shortly after the alleged attack. The report indicated that the examining physician had found abrasions on the victim's neck and left breast, lacerated vagina and bleeding hymen. References in the report to rape as the possible cause of the injuries was deleted prior to the report's admission into evidence.[3]

The author of the medical report did not testify. The Deputy Attorney General represented to the Court that his office had attempted to subpoena the doctor who examined the victim and wrote the report. However, in the process, they learned that the doctor was in Argentina, that he had been expected to return to the United States at some prior date, but that he had not returned as planned. No one the Attorney General's office contacted could explain why the doctor had not returned, although there was some speculation that his failure to return might be related to recent political unrest in the country following Juan Peron's assumption of power.[4]

The State did offer the testimony of another physician, Dr. Nelson, for the purpose of explaining the meaning of several technical terms used in the examining physician's report. Dr. Nelson was then cross-

---

1. Rule 35 provides:
   (a) Post Conviction Remedy.
   Any person who has been sentenced by the court may apply by motion for post-conviction relief for any meritorious claim challenging the judgment of conviction including claims:
   (i) that the conviction was obtained or sentence imposed in violation of the Constitution and laws of this State or the United States . . . .. An application may be filed at any time, provided, however, that post-conviction relief shall not be available so long as there is a possibility of taking a timely appeal from the judgment of conviction.

2. Chief Justice Herrmann, in his opinion for the Supreme Court of Delaware, noted that the confrontation issue might not have been properly before the Court for review in that although defense counsel had initially objected to the admission of the medical report, no objection was lodged to the admission of that report

if certain portions were deleted. I conclude, based on my review of the record, that counsel for defendant were concerned initially with the confrontation problem and over and above that with the problem that the report contained prejudicial hearsay statements indicating "possible rape" as the cause of the victim's condition. (See p. 74 of the trial transcript). Although the latter objection was met by the deletion of the prejudicial portions, I believe the objection to the document on the basis of the confrontation problem still stood.

3. The report read:
   Abrasion injuries on neck, left breast. Hymen bleeding & clot. Introitus lacerated at 6 o'clock oozzing—Wet slides negative for spermotoza.
   332 A.2d 773 at 774.

4. See pp. 56–57 of the trial transcript.

examined by defense counsel concerning possible explanations for the observations made by the examining physician which would be consistent with defendant's contention that he did not sexually assault the victim.

The trial court considered the medical records "seriously harmful"[5] to the petitioner and that finding clearly seems warranted. For the purpose of this petition, then, I will assume that the admission of the records into evidence if error, did not constitute harmless error.

■ Petitioner admits that although the medical records constitute hearsay statements, they nevertheless satisfied the requirements for admissibility of 10 Del.C. § 4310, the Delaware Business Records Exception. He argues, however, that evidence admitted under a recognized hearsay exception, may nevertheless violate an individual's rights under the confrontation clause. I agree with petitioner that an analysis of whether documents satisfy requirements of a state or federal rule of evidence does not end the question of whether an individual's rights under the confrontation clause have been violated. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *cf., Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).[6] However, under the circumstances of this case, where the declarant, through no fault of the State was not available to testify and where the statements themselves were made under circumstances which indicate reliability, I conclude that the admission of the doctor's report involved no violation of petitioner's rights under the confrontation clause.

I believe this case to be controlled by the decision of the Third Circuit Court of Appeals in *United States v. Webber,* 437 F.2d 327 (3rd Cir. 1970), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971), a decision handed down subsequent to the Supreme Court's most recent pronouncements on this aspect of the confrontation clause in the *Green* case and the *Evans* case. In *Webber,* the court upheld the admission under the co-conspirator exception to the hearsay rule of statements made by a member of the extortion conspiracy who had died before the trial began. The court found that the statement by declarant Burgess to his secretary and others concerning payments he had made to defendant Webber were inherently reliable given their spontaneous nature and given that they were made against Burgess' penal interest.[7] The court was ultimately persuaded that there was no confrontation clause violation, however, by the fact that through no fault of its own, the government could not produce the declarant. The court stated:

> In *Delaney v. United States,* 263 U.S. 586, 590, 44 S.Ct. 206, 207, 68 L.Ed. 462 (1924), the Supreme Court decided the precise issue before this Court by holding that the Confrontation Clause of the Sixth Amendment does not prevent the introduction of extrajudicial statements made by a dead co-conspirator:
>
> .     .     .     .     .
>
> ments in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page,* 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968); *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied. (footnote omitted).

---

**5.** *State v. Henson,* 319 A.2d 43 at 43 (1974).

**6.** As the Supreme Court stated in *California v. Green,* 399 U.S. at 155–156, 90 S.Ct. at 1933–1934:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the state-

**7.** See *Dutton v. Evans, supra,* where the court cited similar factors as indicia of the statement's reliability and, therefore, of the appropriateness of submitting the statement to the jury.

The recent case of *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), also raises questions as to the constitutionality of hearsay exceptions the application of which result in the admission of statements when [a] defendant has not had the opportunity to cross-examine the declarant. *Green* recognizes that the effect of the Confrontation Clause is to provide an accused with certain protections at trial: witnesses must testify under oath; the accused can cross-examine the witnesses; the jury can observe the witnesses' demeanor. 399 U.S. at 149, 90 S.Ct. 1930. *However, we do not read Green to mean that an accused must have the benefit of such protections even when it is physically impossible for the Government to bring the witnesses to trial.* *Green* does not overturn established law that the Sixth Amendment permits the introduction of evidence through some exceptions to the hearsay rule. . . . Had Burgess been alive at the time of trial and available to be subpoenaed by the Government, this case would present substantially different issues; but since the Government cannot be faulted for Burgess' absence from Webber's trial, and since *Delaney* controls the precise issue here, we hold that Webber's Sixth Amendment rights were not violated. (emphasis added)

437 F.2d 327 at 337–338, 339.

The instant petition presents virtually the same set of facts as in *Webber.* Here, too, through no fault of the State, the author of the documents was unavailable to testify at trial. The Assistant Attorney General made efforts to subpoena the examining physician only to discover that he had left the country. Moreover, it was reasonable for the Attorney General's office to conclude that even if they had contacted the physician he would not have been able to return to testify for trial given that he had not already returned to this country as expected.[8]

Furthermore, the report itself is inherently reliable. It was made by a disinterested physician who would have no motive to fabricate. Moreover, it was made contemporaneously with his examination and for that reason is likely to be even more accurate than his present recollection of what he observed. In fact, given the length of time which had elapsed between the examination and the trial,[9] the fact that the examination was done in an emergency situation, and that the physician was likely to have performed a number of such examinations during the course of his employment at the hospital, it is reasonable to expect that had he testified at trial, he would have relied heavily on his written report to refresh his recollection concerning the examination he performed if, in fact, he had any recollection at all. In effect, any cross-examination of the physician would, in all probability, have been cross-examination of his current recollection as refreshed by the contents of his prior writing.

Finally, that part of the report given to the jury contained only objective observations by the examining physician, not subjective conclusions by the physician concerning the causes of the physical observations he made. The State made available to

---

**8.** This is not a case like *Government of Virgin Islands v. Aquino,* 378 F.2d 540 (3rd Cir. 1967), where the court held that the state had not made a sufficient showing of the declarant's unavailability. There, the declarant was the complainant on rape charges. The court found that the possibility existed that the complainant, who was a stewardess, was still in the district and within reach of the subpoena power of the court but that the state had made no effort to ascertain whether the complainant had in fact left the Virgin Islands. Nor is this case like *Barber v. Page,* 390 U.S. 719, 725–26, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), where the court held that the declarant's unavailability was not demonstrated simply by the U.S. Attorney's representations to the court that the declarant was a prisoner in a federal institution outside the district, where no effort had been made to utilize processes that did exist to obtain the declarant's presence at trial. In the case before me, the State had no way of compelling the physician to return to this country to testify nor did they have any reason to believe that the physician could or would return to this country voluntarily.

**9.** More than one year.

defendant a witness who could be examined concerning the conclusions to be drawn from the physical symptoms observed and defendant made use of that opportunity for cross-examination at trial. I fail to see how petitioner could have significantly benefited from cross-examination of the physician on whether or not he had in fact observed the symptoms which he reported.[10]

The petition for writ of habeas corpus based on allegations that petitioner's rights under the Confrontation Clause were violated will be denied.

10. This case is not like that of *Phillips v. Neil,* 452 F.2d 337 (9th Cir. 1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972), cited by petitioner in support of his contention that the admission of a medical report violated his rights under the confrontation clause. In the *Phillips* case, the court held that the introduction of hospital records to rebut defendant's insanity defense violated his rights under the confrontation clause. But there the contents were inherently unreliable. The report reflected the mental condition of the defendant a full year before the offense in question. More importantly, observations concerning symptoms of mental illness are not open to the same objective reporting as are symptoms of broken bones, bruises or cuts. Implicit in a report concerning the mental condition of an individual will be the doctors' subjective comparisons of what they observed to what they regard as the standard or norm of behavior. Thus, full opportunity for cross-examination of a psychiatrist or psychologist concerning the basis for their objective observations may well be necessary for triers of the fact to evaluate the testimony they hear from these witnesses.

See also Chief Justice Hermann's discussion of this point at p. 776 of the Supreme Court of Delaware opinion.