Justice ALBIN,
dissenting.
In this companion case to State v. Michaels, 219 N.J. 1, 95 A.3d 648, 2014 WL 3843299 (2014), the majority again announces that a defendant may be denied the opportunity to confront and cross-examine a state-employed scientist or analyst who conducts a laboratory test that implicates him in a crime. The majority finds that the Confrontation Clause is satisfied if a surrogate expert from the same laboratory — who has not performed, participated in, or observed the tests — reviews the test results of the actual analyst and passes them through to the jury. This use of a surrogate witness to bypass the confrontation rights of the accused does not conform with the Sixth Amendment.
For the reasons expressed in my dissent in State v. Michaels, and for the reasons I advance here, I believe that the majority’s adoption of the substitute-witness rule in scientific-testing cases is eviscerating the principles that animate the Confrontation Clause and is in direct conflict with Bullcoming v. New Mexico, 564 U.S. -, -, 131 S.Ct. 2705, 2713, 180 L.Ed.2d 610, 619 (2011) (finding that State’s reliance on substitute witness for analyst who performed blood analysis violates Sixth Amendment’s Confrontation Clause). I therefore respectfully dissent.
*84 I.
Here, Linnea Schiffner, a forensic scientist employed by the New Jersey State Police DNA Laboratory, prepared a DNA profile of a suspect based on a complex series of tests on swabs taken from the victim of an aggravated sexual assault. Jennifer Banaag, another scientist from the same laboratory, prepared a DNA profile based on a sample taken from defendant. At defendant’s trial, the State did not call Schiffner as a witness. Instead, the State presented Banaag, who testified that the DNA profile of the rape suspect prepared by Schiffner matched the profile she prepared from defendant’s DNA.
Significantly, Banaag did not participate in or observe any of Schiffner’s tests. Although Banaag was familiar with the DNA testing procedures in the laboratory, reviewed Schiffner’s written notes, and analyzed the DNA sample taken from defendant, she was a stranger to the tests actually performed by Schiffner. Nevertheless, Banaag read to the jury what Schiffner had done and the results she reached.
At trial, the State argued that defendant must be guilty because Sehiffner’s DNA profile matched the DNA sample taken from defendant. Although Schiffner’s test results were testimonial statements implicating defendant in a crime, defendant was never given the opportunity to cross-examine Schiffner — to ask her how she performed each individual test; what she observed during those tests; and whether there were any errors, lapses, or malfunctions that may have corrupted the integrity of the results.
The majority gives its blessing to a procedure that does an end run around the Sixth Amendment. The opportunity to cross-examine Banaag about Schiffner’s test report no more satisfies the Confrontation Clause than would the opportunity to cross-examine a police witness about an absent eyewitness’s identification of an accused. The primary purpose of Schiffner’s preparing a DNA profile from swabs taken from the victim was to further a criminal prosecution. That DNA profile was offered to the jury for its truth — that the rapist is defendant. That testimonial statement *85 could not be offered to the jury without making Schiffner available for cross-examination.
II.
The Confrontation Clause generally prohibits the use of out-of-court testimonial statements by an absent witness who has not been subject to cross-examination. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177, 192 (2004). The admission of testimonial hearsay evidence is conditioned on the presence of the witness at trial or on the “unavailability [of the witness] and a prior opportunity for cross-examination” of that witness. Id. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. The United States Supreme Court, “relying on Crawford’s rationale, refused to create a ‘forensic evidence’ exception to this rule.” Bullcoming, supra, 564 U.S. at -, 131 S.Ct. at 2713, 180 L.Ed.2d at 620 (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)).
The majority claims to follow “the pre-Williams Confrontation Clause holdings on forensic evidence,” ante at 75, 95 A.3d at 693, Bullcoming and Melendez-Diaz, but those cases give no support to the majority.
The United States Supreme Court held in Bullcoming, supra, that a laboratory analyst who did not perform, participate in, or observe a blood test cannot give surrogate testimony for the absent analyst who did the testing and recorded the results without offending the Sixth Amendment’s Confrontation Clause. 564 U.S. at -, 131 S.Ct. at 2713,180 L.Ed.2d at 619. The Court reached that result because the surrogate expert cannot give firsthand testimony about what the analyst did and observed during a “particular test” or during the “testing process.” Id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 622. The Court also recognized that cross-examination of a surrogate witness cannot “expose any lapses or lies on” the part of the analyst. Ibid. The Court understood that without the analyst on the stand, the defense is deprived of the ability to ask questions that might *86 reveal whether the analyst failed to comply with protocols, id. at - n. 8, 131 S.Ct. at 2715 n. 8, 180 L.Ed.2d at 622 n. 8, or that might reveal whether “incompetence” accounts for the analyst’s test results, id. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 622. See also Melendez-Diaz, supra, 557 U.S. at 310-11, 129 S.Ct. at 2532, 174 L.Ed.2d at 321 (holding that admission of laboratory report identifying substance was testimonial evidence and therefore accused had Sixth Amendment right to confront analyst who prepared it).
Beside the constitutional significance of requiring the analyst to explain the test, there is a very practical reason for demanding testimony from the person who conducted the test: errors in the testing process may not be disclosed absent cross-examination of the analyst. “Confrontation is one means of assuring accurate forensic analysis.” Melendez-Diaz, supra, 557 U.S. at 318, 129 S.Ct. at 2536, 174 L.Ed.2d at 326.
Mistakes occur in laboratories conducting DNA tests. In a DNA analysis, technical “[e]rrors as small and unintentional as an analyst accidentally squeezing a pipette into the wrong tube, or forgetting to change gloves after an extraction, can compromise critical evidence.” Erin Murphy, The New Forensics: Criminal Justice, False Certainty, and the Second Generation of Scientific Evidence, 95 Cal. L.Rev. 721, 754-55 (2007). In addition, there is always the potential of an analyst making a transcription error. For example, “an audit of a Massachusetts crime lab revealed ‘instances in which laboratory officials entered the same genetic profile under two different ID numbers in the database,’ and in which an analyst reported ‘DNA results in four cases matched the genetic material from old rape kits when they had not.’ ” Id. at 773 (quoting Jonathan Saltzman, US Audit Found More Problems at Crime Lab, Boston Globe, Feb. 1, 2007, at Al). Justice Alito has noted that forensic DNA testing may be “ ‘plagued by issues of suboptimal samples, equipment malfunctions and human error.’ ” Dist. Attorney’s Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 81, 129 S.Ct. 2308, 2327, 174 L.Ed.2d 38, 60 (2009) (Alito, *87 J., concurring) (quoting R. Michaelis et al., A Litigator’s Guide to DNA 341 (2008)).
Those errors may never come to light unless the analyst is on the stand and subject to examination. Justice Kagan in her dissent in Williams described a reported rape case in which an analyst at first testified that DNA evidence implicated the defendant, only to retract her testimony when she realized that she had inadvertently switched the labels on the victim’s and defendant’s samples. Williams v. Illinois, 567 U.S. -, -, 132 S.Ct. 2221, 2264, 183 L.Ed.2d 89, 138 (2012).
It thus becomes clear that “exposing lab analyst incompetency, inexperience, bias, or dishonesty through cross-examination is one of the defendant’s few tools for undermining such damning evidence.” Lucie Bernheim, Student Scholarship, Getting Back to Our “Roots”: Why the Use of Cutting Edge Forensic Technology in the Courtroom Should (and Can) Still Be Constrained by the Plain Language of the Confrontation Clause, 10 Seattle J. Soc. Just. 887, 890-91 (2012). “DNA testing is only as reliable as are the people overseeing each of [the] processes.... ” Sheldon Krimsky & Tania Simoneelli, Genetic Justice: DNA Data Banks, Criminal Investigations, & Civil Liberties 280 (2011). Cross-examination of the analyst gives defense counsel the tool to expose mistakes due to cross contamination of test samples, an “inaccurate interpretation” of test results, “completely fabricated results,” and other forms of human error. Bernheim, supra, at 891.
Allowing a surrogate expert witness to testify for the analyst, however well informed the witness may be about laboratory procedures and about the analyst’s notes, is not an adequate substitute for what the Sixth Amendment guarantees — confrontation. Cross-examination of a surrogate witness is a useless exercise because the surrogate cannot answer what precise tests the actual analyst performed; the surrogate can only repeat what the analyst recorded.
*88 III.
The State offered the DNA profile prepared by Schiffner as an accurate and truthful scientific analysis. Sehiffner’s test results were testimonial statements that incriminated defendant and were powerful evidence presented to convict defendant. Schiffner’s results were read to the jury by Banaag, the surrogate witness. The majority contends that Banaag, who read to the jury Schiffner’s notes and machine-generated data but who did not conduct, participate in, or observe the actual testing, could testify about what Schiffner did and observed. But this is precisely what the Confrontation Clause prohibits. See Bullcoming, supra, 564 U.S. at -, 131 S.Ct. at 2715, 180 L.Ed.2d at 621.
The majority does not dispute that Schiffner’s test results were testimonial or that the DNA profile she prepared was offered for its truth. That the surrogate witness checked Schiffner’s work product or came to her own conclusions does not alter the fact that Schiffner’s testimonial statements were passed through to the jury without affording defendant his right of confrontation.
The core principle that has animated Confrontation Clause jurisprudence since Crawford is that a testimonial statement may not be presented to the jury unless the witness making that statement is subject to cross-examination at trial or was previously available for cross-examination. Crawford, supra, 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203.
IV.
Cross-examination has been described as one of the greatest devices ever conceived for the exposition of truth and disclosure of error. See California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970). Cross-examination is rendered a useless weapon in the truth-seeking process when the person bearing testimonial statements against the accused does not have to be called as a witness and when that absent witness’s damning testimonial statements can be introduced through a surrogate. *89 The Confrontation Clause was intended to interdict the testimony that the majority now allows. The protections afforded by the Confrontation Clause are lost when the testimony of the person with firsthand knowledge — whether a scientist or an eyewitness— is not tested in the crucible of cross-examination.
Because I do not believe that defendant was accorded the rights guaranteed to him by the Sixth Amendment, I respectfully dissent.
For affirmance — Chief Justice RABNER and Justices LaVECCHIA, PATTERSON, FERNANDEZ-VINA and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned) — 6.
For reversal — Justice ALBIN — 1.