

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0635-19

**JAMES RAY HAGGARD, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE NINTH COURT OF APPEALS
LIBERTY COUNTY**

**SLAUGHTER, J.,** filed a dissenting opinion.

### DISSENTING  OPINION[1]

The Confrontation Clause of the United States Constitution's Sixth Amendment "comes to

---

[1] Judge Yeary's concurring opinion correctly notes that the court of appeals conducted no error analysis in this case. Instead, it simply assumed without deciding that the Confrontation Clause was violated and proceeded with a harm analysis. Thus, this Court should not conduct an error analysis on the Confrontation Clause issue and should address only the court of appeals' harm analysis. But because the Court nevertheless chooses to address the Confrontation Clause issue, and because I disagree with the Court's analysis, I feel compelled to write this opinion.

us on faded parchment. History seems to give us very little insight into [its] intended scope." *California v. Green*, 399 U.S. 149, 173–74 (1970) (Harlan, J., concurring). The United States Supreme Court, likewise, gives us little clarity. Instead, over the years, the Supreme Court has given us inconsistent (and several plurality) decisions leaving the scope and application of the Confrontation Clause in flux. *See, e.g., Ramos v. Louisiana*, __ U.S. __; 140 S. Ct. 1390, 1406 (2020) (noting that "*Crawford v. Washington*[, 541 U.S. 36 (2004)] overturned prior interpretations of the Confrontation Clause"); *Johnson v. United States*, 576 U.S. 591, 628 (2015) (Alito, J., dissenting) ("[W]e have been unable to come to an agreement on many recurring legal questions. The Confrontation Clause is one example that comes readily to mind."); *Ohio v. Clark*, 576 U.S. 237, 252 (2015) (Scalia, J., dissenting) (calling the *Crawford* decision "a categorical overruling, the thorough repudiation, of an earlier line of cases," while the majority suggested that the pre-*Crawford* approach to the Confrontation Clause may still be available).

The Court's opinion acknowledges that the Supreme Court's 2004 decision in *Crawford* adopted a new approach to confrontation issues that likely changes how we should analyze questions relating to video testimony. *Maj. Op.* at 12–13. Yet, without conducting much analysis regarding the correct approach after *Crawford* and in light of the Confrontation Clause's objectives, the Court concludes that we must still apply the pre-*Crawford* approach used for remote testimony that asks us, in part, to determine whether such testimony "further[s] an important public policy" and also requires a case-specific finding of necessity based on evidence. *Id.* The Court bases these requirements on the Supreme Court's prior decisions in *Maryland v. Craig*, 497 U.S. 836 (1990) (addressing confrontation issue involving one-way video testimony), and *Coy v. Iowa*, 487 U.S. 1012 (1988) (addressing confrontation issue involving use of screen between defendant

and witness at trial). Neither of these cases, however, involved live, two-way video testimony, as is the case here. These cases also do not take into account the advances in modern technology that have vastly improved the quality of video conferencing technology over the past thirty years. In any event, after *Crawford*, we do not know whether either *Craig* or *Coy* are still valid precedents. If they are, we do not know how they would apply to the factually distinct scenario of live, two-way video testimony.[2]

*Craig* emphasized that the right to literal face-to-face confrontation might give way to important policy considerations in some situations, so long as the reliability of the testimony was otherwise assured. *Crawford*, however, adopted a view of the Confrontation Clause that suggested such subjective considerations were improper; rather, the proper inquiry was based on the firm requirement of an opportunity to cross-examine the witness (and, in the case of out-of-court testimonial statements, the witness must be unavailable to testify). *Compare Craig,* 497 U.S. at 844, 850 (stating that the Supreme Court has "never held . . . that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial," and permitting one-way video testimony where "necessary to further an important

---

[2] Marc C. McAllister, *Two-Way Video Trial Testimony and The Confrontation Clause: Fashioning a Better* Craig *Test in Light of* Crawford, 34 FLA. ST. L. REV. 835, 835 (2007) (noting, after *Crawford*, that "[t]he use of videoconference technology to capture the testimony of remote trial witnesses raises complex legal issues for which the United States Supreme Court has provided little guidance . . . . Whether and under what circumstances two-way video transmission of remote witness testimony violates the Sixth Amendment's guarantee of confrontation are issues in need of clearer guidelines."); *see also id.* at 868 (opining that the analysis in *Crawford* "suggests that an overwhelming majority of the current Supreme Court Justices would find the *Craig* test constitutionally suspect, in that it ratifies testimonial statements under a . . . subjective determination of reliability without necessarily requiring an opportunity for cross-examination").

public policy and only where the reliability of the testimony is otherwise assured"), *with Crawford, 541 U.S. at 53–54* (stating in context of admissibility of out-of-court statements, "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.").

Given the inherent tension between *Craig*'s policy/reliability-based approach and *Crawford*'s more rigid interpretation of the Sixth Amendment that focuses on the right of cross-examination, lower courts have adopted a variety of tests for determining whether remote witness testimony via two-way video is allowed.[3] Whether a necessity finding is required is likewise up

---

[3] *See, e.g., United States v. Abu Ali*, 528 F.3d 210, 240 (4th Cir. 2008) (applying *Craig* to situation involving two-way video and requiring that, absent face-to-face confrontation, the denial of confrontation was "necessary to further an important public policy" and that "the reliability of the testimony is otherwise assured") (quoting *Craig*, 497 U.S. at 850); *Horn v. Quarterman*, 508 F.3d 306, 317–18 & n.17 (5th Cir. 2007) (noting that Supreme Court "has not specifically addressed the use of two-way closed-circuit television" and that, since *Craig*, "circuits have disagreed on the issue of whether *Craig*'s requirement of a specific finding of necessity applies to testimony by two-way closed circuit television as well as to testimony by one-way closed circuit television;" the court went on to apply *Craig* and conclude that testimony via two-way video was not an unreasonable application of clearly established federal law); *Fuster-Escalona v. Florida Dept. Of Corrections*, 170 F. App'x. 627, 629-30 (11th Cir. 2006) (per curiam, not designated for publication) (holding that it is "not contrary to, or an unreasonable application of, established federal law to hold that no case-specific findings were required prior to [ ] four children testifying via two-way closed television" in child-abuse case, and finding *Craig* distinguishable because it involved one-way video); *United States v. Donziger*, Nos. 19-CR-561 & 11-CV-691, 2020 U.S. Dist. LEXIS 157797, at *5, 2020 WL 5152162, at *2 (order of Aug. 31, 2020) (allowing the use of live two-way video testimony for sick witness located out of state "[u]pon a finding of exceptional circumstances" and when it "furthers the interests of justice") (quoting *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999)); *People v. Jemison*, _N.W.2d_, 2020 WL 3421925, at *6-7 (Mich. June 22, 2020) (holding *Craig* is limited to its facts and instead applying *Crawford* test to remote two-way video testimony by DNA analyst); see *also* McAllister, *supra* note 2, at

in the air. Absent express guidance from the Supreme Court on the proper test governing two-way video testimony, courts should answer this question by looking to the underlying purposes served by the Confrontation Clause, rather than reflexively applying precedent that addresses factually distinct scenarios. In my view, when all the Confrontation Clause components are satisfied through a two-way video procedure that adequately serves the purposes for which the Clause was adopted, then there is no constitutional violation.[4] When there is no violation, a necessity finding seems quite . . . unnecessary.

After *Crawford*, we seem to be left with two certainties about the Confrontation Clause. First, the main reason the Founders included the Confrontation Clause in the Sixth Amendment was to prevent trial by depositions or *ex parte* written affidavits. *Mattox v. United States*, 156 U.S. 237, 242–43 (1895); *Crawford*, 541 U.S. at 50 ("[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex*

---

845 (discussing various decisions on the question of what test governs confrontation challenge to two-way video testimony). Of course, I cite the foregoing authorities not for the purpose of suggesting that they all support my position, but rather to show that courts have adopted a variety of approaches to this problem. Given these various approaches, it is apparent that whether *Craig*'s necessity requirement strictly governs this situation is an open question subject to debate, rather than firmly settled law as has been suggested.

[4] *See Gigante*, 166 F.3d at 80 (holding two-way video testimony did not violate Confrontation Clause where the remote witness "was sworn; he was subject to full cross-examination; he testified in full view of the jury, court, and defense counsel; and [the witness] gave this testimony under the eye of [the defendant] himself. [The defendant] forfeited none of the constitutional protections of confrontation"). I recognize that the Court in *Gigante* additionally required a showing of "exceptional circumstances" to permit remote witness testimony (in that case, the witness was too ill to appear and was in a witness protection program). *Id.* at 81–82. However, the *Gigante* court held that there was no constitutional violation. Thus, where the defendant's confrontation rights are otherwise fully protected and there is no constitutional violation, it makes no sense to require anything further.

*parte* communications as evidence against the accused."). Second, the four key components of the Confrontation Clause, when it applies, are that it: (1) requires the witness to take an oath to testify truthfully; (2) allows for face-to-face examination of the witness (but exceptions are allowed);[5] (3) provides the opportunity for cross-examination; and (4) allows the fact-finder to observe the witness's demeanor. *See, e.g., Craig,* 497 U.S. at 845–46; *Green*, 399 U.S. at 158 (noting that the Confrontation Clause "insures that the witness will give his statements under oath[,] . . . forces the witness to submit to cross-examination, . . . [and] permits the jury . . . to observe the demeanor of the witness.);" *see also,* Brooks, Note, *Two-Way Video Testimony and the Confrontation Clause: Protecting Vulnerable Victims After Crawford*, 8 STAN. J.C.R. & C.L. 183, 191–96 (April 2012) (discussing various Supreme Court cases). Assuming *arguendo* that the Confrontation Clause applies to Devore's statements,[6] allowing Devore to testify live by two-way video satisfies each

---

[5] The Supreme Court has long recognized that out-of-court statements that would have been admissible at the time of the Constitution's adoption are admissible notwithstanding the Confrontation Clause—namely, the traditional hearsay exceptions. *See Crawford,* 541 U.S. at 51–56. Further, the Supreme Court applies the Confrontation Clause only to testimonial statements; it does not apply to nontestimonial statements. *Michigan v. Bryant*, 563 U.S. 344, 353–54 (2011) (noting that *Crawford* "limited the Confrontation Clause's reach to testimonial statements" and that "testimonial" statements include "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations") (quoting *Crawford*, 541 U.S. at 68).

[6] The Supreme Court has noted that only testimonial statements are subject to the Confrontation Clause. *Crawford*, 541 U.S. at 51 (stating that the Confrontation Clause applies only to "'witnesses' against the accused . . . those who 'bear testimony.'"). Non-testimonial statements are generally outside the scope of the Confrontation Clause. *Michigan v. Bryant*, 562 U.S. 344, 354 (2011). But the Supreme Court has not given us an exhaustive list of what type of statements it considers "testimonial." *Ohio v. Clark*, 576 U.S. 237, 243–44 (2015). The general rule in determining if a statement is testimonial or nontestimonial, however, "is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 245 (quoting *Bryant*, 562 U.S. at 358). "And

of these four components such that no constitutional violation occurred.

The oath component was satisfied by Devore being sworn by a Montana notary public on her end in front of the camera in full view of everyone in the courtroom.[7]

Regarding the personal examination component, Devore testified by two-way video with her live image "projected on the video screens located at counsel table in front of both the prosecutor and defense counsel on the video screen located on the trial court's bench, and projected on a 60-inch TV screen for the jury." *State's Brief* at 52. The questioner was in full view of Devore.

---

in determining whether a statement is testimonial, 'standard rules of hearsay, designed to identify some statements as reliable, will be relevant.'" *Id.* (quoting *Bryant*, 562 U.S. at 358–59). Further, Confrontation Clause exceptions which were established at the time of this Country's founding are still recognized today. *Clark*, 576 U.S. at 246 ("We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding.") (citing *Giles v. California*, 554 U.S. 353, 358–359 (2008); *Crawford*, 541 U.S. at 56, n. 6, 62); *see also Crawford*, 541 U.S. at 54 (citing *Mattox*, 156 U.S. at 243). Statements made for medical treatment are among those "firmly-rooted" exceptions bringing such statements outside the purview of the Confrontation Clause. *See White v. Illinois,* 502 U.S. 346, 357 (1992). The declarant does not have to "either be produced at trial or be found unavailable before his out-of-court statement may be admitted into evidence." *Id.* at 353. Because Devore is a SANE who conducted a medical examination of the victim and testified as an expert regarding what is set forth in her report, her statements may be nontestimonial or otherwise fall within the medical treatment exception. But because this issue is not addressed in the Court's opinion, I will not discuss it further here.

[7] Devore could have also been administered the oath over two-way video by the trial judge. Two-way video may be used to administer oaths for probable cause affidavits and other matters. *See* TEX. CODE. CRIM. PROC. ART. 18.01 (allowing for oaths to be administered and probable-cause affidavits to be transmitted by reliable electronic means). Oaths can even be administered over the phone without video. *Clay v. State*, 391 S.W.3d 94, 103 (Tex. Crim. App. 2013) (finding that officer's oath sworn over the phone to a magistrate was sufficient and holding, "We see no compelling reason to construe the 'sworn affidavit' contemplated by Article 18.01(b) necessarily to require that the oath always be administered in the corporal presence of the magistrate, so long as sufficient care is taken in the individual case to preserve the same or an equivalent solemnizing function to that which corporal presence accomplishes.").

*Id.* While Appellant objected to allowing Devore to testify by two-way video, he made no objections to the positioning of the camera or to the number and size of screens utilized.

The "face-to-face" component was satisfied because the two-way video allowed for each person to see and hear the other so that Appellant and his counsel had the ability to be "face-to-face" with Devore.[8] "Face-to-face" confrontation does not always have to be within the physical presence of the defendant. *Craig*, 497 U.S. at 850 (finding that confrontation rights "may be satisfied absent a physical, face-to-face confrontation").[9] Two-way video allows this face-to-face meeting and, with today's technology, usually allows each party the ability to see and hear the other better than if they were across the courtroom from each other.

The two-way video also allowed for defense counsel to fully cross-examine Devore. Appellant was able to look upon Devore while being tried, fully cross-examine her, and if needed,

---

[8] Appellant, in his brief, claims that Devore could not see him during her testimony. *Appellant's Brief* at 5. But Appellant did not complain about camera position at trial. If he had, arrangements could have been made to ensure that Devore could see Appellant.

[9] The Supreme Court in *Craig* did state that denial of physical, face-to-face confrontation should be allowed only when "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850. But first of all, as discussed above, I do not believe *Craig* applies and may no longer be good precedent. And second, in *Craig*, the Court was addressing one-way video. There is no valid argument or reason why face-to-face confrontation through two-way video does not satisfy this component. *See* Jessica Brooks, Note, *Two-Way Video Testimony and the Confrontation Clause: Protecting Vulnerable Victims After Crawford*, 8 STAN. J.C.R. & C.L. 183, 204–07 (April 2012). Moreover, the Supreme Court and other federal circuit courts have determined on many occasions that using two-way video testimony does not violate the Confrontation Clause. *Coy*, 487 U.S. at 1023 (1988) (O'Connor, J., concurring, noting favorably that many states and lower court cases allowed the use of two-way video testimony in child abuse cases); *Gigante*, 166 F.3d 75; *Horn*, 508 F.3d 306; *Fuster-Escalona*, 170 Fed App'x. 627. If there is no Confrontation Clause violation, then why must there be a specific finding by the trial court as long as reliability is assured?

was able to impeach her "in every mode authorized by the established rules governing the trial or conduct of criminal cases." *Coy*, 487 U.S. at 1017.[10]

Finally, everyone in the courtroom was able to observe Devore's demeanor. Devore's two-way video testimony was projected on other screens across the courtroom and on a 60" television screen for the jury. Devore was required to remain in front of the device she was using as a camera at all times so that she stayed in the view of the prosecutor, defense counsel, defendant, judge, and jury. The person questioning Devore stood in view of the camera so that she could see her questioner face-to-face. Defense counsel argued that this was still a Confrontation Clause violation because "it did not reveal Devore's entire body while testifying." Thus, "the jury could not see if she was wringing her hands, bouncing her legs, or engaging in other body language that indicates deception." First, Appellant never raised this concern during the proceedings to allow for adjustment of the camera angle if he was concerned about this. Second, had Devore testified from the witness stand in the courtroom, the jury still could have only seen, at most, the top half of her and would not have been able to see the possible actions about which Appellant raises concern. Having Devore projected on a large screen likely allowed the jury a closer and clearer view of Devore's demeanor and facial expressions than what they would have been able to see had she been physically present in the courtroom.

There is no Confrontation Clause violation using two-way video as long as the four

---

[10] It is notable that the Supreme Court allows admission of testimonial witness statements as long as the "declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" the witness. *Crawford*, 541 U.S. at 38. In cases such as these, the defendant is not allowed face-to-face confrontation in front of the fact-finder, nor can the fact-finder observe the witness's demeanor. This suggests that the number one, most important aspect of the Confrontation Clause is the right to cross-examination.

components are otherwise satisfied. Thus, to reiterate, when there is no Confrontation Clause violation, why does the trial court need to make a necessity finding? A necessity finding seems to be appropriate when making an exception to the Confrontation Clause components, but not when there is no violation.[11]

Simply put, there was no Confrontation Clause violation here. In examining the history and purpose of the Confrontation Clause, all of Appellant's confrontation rights were fully protected. While I personally prefer having witnesses physically in the courtroom and do not believe that defendants should prefer two-way video testimony, the lack of a physical presence alone when all four components are adequately protected does not amount to a Confrontation Clause violation. Contrary to the Court's hyperbole regarding my position, I have never said that "virtual confrontation is superior to physical confrontation." *Maj. Op.* at 14, n. 14. In fact, I think that everyone's preference (including mine) is probably live witnesses testifying in person from the witness stand inside the courtroom. But it is hard to argue against the fact that current technology allows for the opportunity to see and hear a witness better through two-way video than if that witness was testifying in the courtroom.[12] Further, while we can all agree that in-person testimony

---

[11] I recognize that this Court's prior decisions involving the use of two-way video testimony have applied *Craig* and required a necessity finding. I do not address these opinions because they are outdated in light of more recent Supreme Court cases cited herein. *See Crawford,* 541 U.S. 36. Instead of criticizing me for not following cases of questionable substance given the changes in Supreme Court opinions, advances in technology since 1999, and inconsistent opinions among the federal circuit courts, the Court should, instead, focus on the realities of the world we live in today and conduct a more up-to-date analysis of how these various matters impact application of the Confrontation Clause.

[12] The Court suggests that the minor, brief technical glitches experienced with Devore's testimony proves that testimony by two-way video is inferior. But such minor glitches are no different than

is overall preferred, my position is that two-way video testimony simply does not violate the Confrontation Clause.

Moreover, a defendant can take steps to ensure that witnesses testify from the courtroom. Both the State and defense have the right to subpoena witnesses. Thus, going forward, if either side wants to ensure a witness testifies while physically in the courtroom rather than by two-way video, they each have the ability to secure any such witnesses through that subpoena power. I am not saying that a defendant must do that, and there is certainly no requirement for him to do so, but he has that option. Ultimately, however, the decision on whether to allow a witness to testify by two-way video and the method used is within the sound discretion of the trial court. *Flannery v. State*, 216 S.W.2d 980, 982 (1948) ("Some latitude must, of necessity, be given the trial court as to the manner in which a trial is conducted. Orderly procedure in the court room so requires. This latitude extends to and includes the manner and method of the presentation of the testimony and the examination of the witnesses. To be reversible, errors claimed in such matters must be such as to be openly prejudicial to the rights of the accused, and must constitute an abuse of discretion by the trial court."). It would be an abuse of discretion if the method chosen by the trial court violated the Confrontation Clause, but there was no abuse of discretion in this case. Additionally, if as a matter of policy, the Legislature were to create rules for when two-way video testimony may be allowed, that would be appropriate. What is not appropriate (as recognized in *Crawford*) is where, like here (and in *Craig*), courts are weighing policy decisions involving

---

glitches that can be experienced with a live witness in a courtroom – coughing fits, microphone malfunction, a soft-spoken witness that the jurors cannot hear well, a witness with a heavy accent, etc.

constitutional rights. *See Crawford*, 541 U.S. at 67-68 ("[The Framers] knew that judges, like other government officers, could not always be trusted to safeguard the rights of the people. . . . They were loath to leave too much discretion in judicial hands. . . By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to [the Framers'] design.").

For the aforementioned reasons, I would affirm the judgment of the court of appeals upholding Appellant's conviction. As such, I dissent.

Filed: December 9, 2020
Publish